EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J. Thompson, et al., Individually and on Behalf of All Others Similarly Situated | Case No.:  2:16-cv-01183 |
| Plaintiffs, | STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS ARLINGTON CONTACT LENS SERVICE, INC. AND NATIONAL VISION, INC. |
| vs. | |
| 1-800 Contacts, Inc., et al., | Judge Tena Campbell |
| Defendants. | Magistrate Judge Dustin B. Pead |

## TABLE OF CONTENTS

Page

I.      PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT........................................1

II.     NVI/AC LENS'S DENIALS OF WRONGDOING AND LIABILITY.............................2

III.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT..........................2

        1.      Definitions.................................................................................................2

        2.      CAFA Notice ............................................................................................9

        3.      The Settlement ..........................................................................................9

                A.      The Settlement Fund ......................................................................9

                B.      The Escrow Agent.........................................................................10

        4.      Taxes...........................................................................................................11

        5.      Refund Upon Termination of Settlement..............................................12

        6.      Preliminary Approval Order and Settlement Hearing ..........................12

        7.      Releases......................................................................................................13

        8.      Administration and Calculation of Claims, Final Awards, and Supervision
                and Distribution of the Settlement Fund................................................15

        9.      Plaintiffs' Counsel's Attorneys' Fees, Costs, Charges and Expenses..................18

        10.     Conditions of Settlement and Effect of Disapproval, Cancellation, or
                Termination................................................................................................20

        11.     Cooperation................................................................................................23

        12.     Miscellaneous Provisions.........................................................................24

This Stipulation and Agreement of Settlement (the "Stipulation" or the "Settlement Agreement"), dated September 19, 2017 (the "Execution Date"), submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, embodies a settlement (the "Settlement") made and entered into by and among: (i) J. Thompson, Iysha Abed, Daniel J. Bartolucci, Alexa Bean, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, and Edward Ungvarsky (collectively, "Plaintiffs") for themselves and on behalf of each Settlement Class Member, on the one hand, and (ii) National Vision, Inc. ("NVI") and Arlington Contact Lens Service, Inc. ("AC Lens"; collectively with NVI, the "Settling Defendants"), on the other hand, by and through their counsel of record in the above-captioned litigation pending in the United States District Court for the District of Utah and any other actions that may be transferred or consolidated into this litigation pursuant to the Court's May 10, 2017 Order Appointing Interim Class Counsel (the "Action"). This Stipulation is intended by the parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section III.1 below.

## I.   PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Interim Lead Counsel believe Plaintiffs' claims asserted in the Action have substantial merit, but also have taken into account the uncertain outcome and risks of further litigation. Interim Lead Counsel believe that entering into the Settlement at this time, particularly in light of the cooperation to be provided by the Settling Defendants to Interim Lead Counsel, confers substantial benefits upon the Settlement Class. Based on their evaluation, Interim Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Plaintiffs and the Settlement Class, and is fair, reasonable, and adequate.

1

## II.   NVI/AC LENS'S DENIALS OF WRONGDOING AND LIABILITY

The Settling Defendants have consistently denied and continue to deny that they have violated any laws and maintain that their conduct was at all times proper and in compliance with all applicable provisions of law in all material respects. The Settling Defendants have denied and continue to deny specifically each and all of the claims and contentions of wrongful conduct by the Settling Defendants alleged in the Action, along with all charges of wrongdoing or liability against them arising out of any of the conduct alleged, or that could have been alleged, in the Action.

## III.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs, on the one hand, and the Settling Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released as to all Releasees, and the Action shall be settled, compromised, and dismissed with prejudice as to the Releasees, without costs, except as stated herein, and releases extended as set forth in this Settlement Agreement, upon and subject to the terms and conditions of the Stipulation, as follows.

1.   **Definitions**

As used in this Stipulation the following terms have the meanings specified below:

1.1   "Amended Complaint" means the Consolidated Amended Complaint, dated May 31, 2017, filed in this Action, ECF No. 72.

2

1.2     "Authorized Claimant" means any Settlement Class Member who submits a timely and valid Proof of Claim and Release Form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3     "Bar Date" is defined in Paragraph 8.6.

1.4     "Claims Administrator" means a qualified administrator selected by Interim Lead Counsel.

1.5     "Class Notice and Administration Expenses" means the fees and expenses reasonably and actually incurred in connection with providing Notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release Forms, and paying escrow fees and costs, if any.

1.6     "Court" means the United States District Court for the District of Utah.

1.7     "Defendants" means any and all parties named as defendants in the Amended Complaint and/or in any further amended complaint or pleading filed in this Action.

1.8     "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 10.1 of the Stipulation have been met and have occurred.

1.9     "Escrow Account" means the interest-bearing account controlled by either Boies Schiller Flexner LLP or Robbins Geller Rudman & Dowd LLP, and administered by the Escrow Agent, into which the Settlement Amount shall be deposited by or on behalf of the Settling Defendants in accordance with the schedule specified in Paragraph 3.1.

1.10    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successors.

1.11    "Fee and Expense Application" is defined in Paragraph 9.1.

1.12    "Fee and Expense Award" is defined in Paragraph 9.1.

3

1.13    "Final" means when the last of the following with respect to the Judgment and Order of Dismissal shall occur: (i) the expiration of the time to file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed under Federal Rule of Civil Procedure 59(e) or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses, any Plaintiffs' Service Awards, or any Plan of Allocation of the Net Settlement Fund.

1.14    "Judgment and Order of Dismissal" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, in a form agreed to by the Settling Parties.

1.15    "Interim Lead Counsel" means Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP.

1.16    "Materials" means any document, information, or materials, in any format, whether oral or written, that may be requested and/or produced pursuant to this Settlement Agreement.

1.17    "Net Settlement Fund" means the Settlement Fund less: (i) the amount of the Fee and Expense Award and any Plaintiffs' Service Award, if requested, and to the extent allowed by the Court; (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.18    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action to be sent to Settlement Class Members, as approved by the Court.

1.19    "Person" means a natural person, individual, corporation, partnership, limited partnership, association, pension fund, mutual fund, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, beneficiaries, trustees, or assignees, and any other entity on behalf of whom the person has a legal right to make or release a claim.

1.20    "Plaintiffs" means J. Thompson, Iysha Abed, Daniel J. Bartolucci, Alexa Bean, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, and Edward Ungvarsky for themselves and on behalf of each Settlement Class Member.

1.21    "Plaintiffs' Counsel" means Interim Lead Counsel and any counsel who appeared on behalf of Plaintiffs in the Action.

1.22    "Plaintiffs' Service Award" is defined in Paragraph 9.2.

1.23    "Plaintiffs' Service Award Application" is defined in Paragraph 9.2.

1.24    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund pursuant to which the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation, and the Settling Defendants shall have no responsibility or liability with respect to the Plan of Allocation.

1.25    "Preliminary Approval Order" means the order requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation.

1.26    "Proof of Claim and Release Form" means the form as eventually approved by the Court for such use.

1.27    "Released Claims" shall be any and all manner of claims, debts, demands, rights, interests, actions, suits, causes of action, whether class, individual or otherwise in nature, fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, direct or indirect claims or demands of rescission, damages, interest, attorneys' fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule or regulation, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, which Releasors, whether directly, representatively, derivatively, or in any other capacity, now or ever had against Releasees from the beginning of time through September 19, 2017, arising from or relating in any way to any conduct alleged, or could have been alleged, based on the predicate of the Action under the Sherman Antitrust Act, any federal, state, local, statutory or common law, in equity, or on any other law, rule or regulation, or the law of any foreign jurisdiction.

1.28    "Releasees" means, collectively, (a) the Settling Defendants and (b) their predecessors, successors and assigns, their direct and indirect parents, subsidiaries, and affiliates, and their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of the Settling Defendants), shareholders (in their capacity as shareholders of the Settling Defendants), attorneys, and legal representatives, and the

predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.
"Affiliates" in this definition means entities controlling, controlled by, or under common control
with a Releasee. Exclusive of the Settling Defendants, "Releasees" does not include any current
Defendant in the Action or any entity listed in the chart in paragraph 56 of the Amended
Complaint, which has not been named as a defendant in the Action.

1.29    "Releasors" means the named Plaintiffs in the Action and each and every
Settlement Class Member and their respective beneficiaries, estates, and assigns, including any
Person succeeding to their respective interest.

1.30    "Settlement Amount" means seven million U.S. dollars ($7,000,000) in cash.

1.31 "Settlement Class" means all persons in the United States who made at least one
online purchase of contact lenses from 1-800 Contacts, Inc. (" 1-800"), Arlington Contact Lens
Service, Inc., or National Vision, Inc. from March 10, 2010 through September 19, 2017, who
do not timely exclude themselves from the Class. Excluded from the Settlement Class are
Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators,
governmental entities and instrumentalities of government, states and their subdivisions,
agencies and instrumentalities.

1.32    "Settlement Class Member" means a Person who falls within the definition of the
Settlement Class.

1.33    "Settlement Class Period" means the period from March 10, 2010 through
September 19, 2017.

1.34    "Settling Defendants" means NVI and AC Lens, and each of their respective past
or present direct and indirect subsidiaries, parents (including holding companies), affiliates,
associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act

of 1934), divisions, joint ventures, predecessors, successors, agents, attorneys, legal or other representatives, insurers (including reinsurers and co-insurers), assigns, assignees, and current and former employees, officers, and directors of any other of the foregoing entities.

1.35    "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon after being transferred to the Escrow Account.

1.36    "Settlement Hearing" is defined in Paragraph 6.5.

1.37    "Settling Parties" means Plaintiffs and the Settling Defendants.

1.38    "Taxes" is defined in Paragraph 4.3.

1.39    "Tax Expenses" is defined in Paragraph 4.3.

1.40    "Termination Notice" is defined in Paragraph 10.2.

1.41    "Unknown Claims" means any and all Released Claims against the Releasees which the Releasors  do not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasors or the Releasees might have affected his, her, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, by operation of the Judgment and Order of Dismissal, upon the Effective Date, the Releasors shall have expressly waived, and each Settlement Class Member shall be deemed to have waived and by operation of the Judgment and Order of Dismissal shall have expressly waived, the provisions, rights, and benefits of Cal. Civ. Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to

8

Cal. Civ. Code Section 1542. The Releasors and the Releasees may hereafter discover facts other than or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims. Nevertheless, the Releasors shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member upon the Effective Date shall be deemed to have and by operation of the Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all of their respective Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 2.    **CAFA Notice**

2.1     The Settling Defendants shall bear the costs and responsibility of serving notice of the settlement and shall do so in a timely manner upon the "Appropriate State Official" and "Appropriate Federal Official," as those terms are defined by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a).

## 3.    **The Settlement**

### A.    **The Settlement Fund**

3.1     The Settling Defendants shall cause fifty percent (50%) of the Settlement Amount to be deposited into the Escrow Account within ten (10) days of the Court's entry of the Preliminary Approval Order, provided that the time by which the Settling Defendants must pay into the Escrow Account does not begin to run until Interim Lead Counsel has provided the Settling Defendants with such information as the Settling Defendants may require to complete the wire transfer. The Settling Defendants shall cause the remaining fifty percent (50%) of the

Settlement Amount to be deposited into the Escrow Account within seven (7) business days after the entry of a final order and judgment by the Court approving the Stipulation.

3.2     Except as required by Paragraph 3.1 concerning payment of the Settlement Amount, and except as provided in Paragraph 5.1 concerning refund upon termination of the Settlement, the Settling Defendants shall have no responsibility for any other costs, including any attorneys' fees and expenses or costs of class notice and claims administration, but all such fees, expenses, and costs shall be paid from the Settlement Amount, as approved by the Court. For the sake of clarity, the only costs to be incurred by the Settling Defendants under this Settlement Agreement are those to comply with their obligations set forth in Section 11.

**B.     The Escrow Agent**

3.3     The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in the Stipulation; (b) by an order of the Court; or (c) with the written agreement of counsel for the Settling Parties.

3.4     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Settling Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent or any transaction executed by the Escrow Agent.

3.5     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed in their entirety in accordance with Paragraphs 8.3, 8.4, 8.7, and 8.9.

4.      Taxes

4.1      The Settling Parties agree to treat the Settlement Fund as being at all times a

"Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1 and

agree not to take any position for tax purposes inconsistent therewith.  In addition, the Escrow

Agent shall timely make such elections as necessary or advisable to carry out the provisions of

this Section 4, including the "relation-back election" (as defined in Treasury Regulation Section

1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with

the procedures and requirements contained in such regulations.  It shall be the responsibility of

the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and

delivered, the necessary documentation for signature by all necessary parties, and thereafter to

cause the appropriate filing to occur.

4.2      For the purpose of Section 468B of the Internal Revenue Code of 1986, as

amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

Agent.  The Escrow Agent shall timely and properly file, or cause to be filed, all informational

and other tax returns necessary or advisable with respect to the Settlement Fund (including,

without limitation, the returns described in Treasury Regulation Section 1.468B-2(k)).

4.3      All (a) taxes (including any estimated taxes, interest, or penalties) arising with

respect to the income earned on the Settlement Amount, including any taxes or tax detriments

that may be imposed upon the Settling Parties or their counsel with respect to any income earned

on the Settlement Amount for any period during which the Settlement Amount does not qualify

as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (b)

expenses and costs incurred in connection with the operation and implementation of this

Section 4 (including, without limitation, expenses of tax attorneys and/or accountants, mailing

and distribution costs and expenses relating to filing (or failing to file) the returns described in

this Section 4) ("Tax Expenses"), shall be paid out of the Settlement Amount; in all events the Settling Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Escrow Account without prior approval of the Settling Defendants, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation Section 1.468B-2(l)(2)). The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 4.

5.     **Refund Upon Termination of Settlement**

5.1     In the event the Settlement: (i) is not approved; (ii) is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment and Order of Dismissal is reversed or vacated following any appeal taken therefrom; or (iii) is successfully collaterally attacked, any portion of the Settlement Amount that had been deposited into the Escrow Account by the Settling Defendants pursuant to Paragraph 3.1 shall be returned to the Settling Defendants within  ten (10)   days, except for up to $100,000 of sums actually paid from the Settlement Fund for the reasonable costs of Notice.

6.     **Preliminary Approval Order and Settlement Hearing**

6.1     Interim Lead Counsel shall submit the Stipulation to the Court and shall apply for entry of the Preliminary Approval Order. The timing of these submissions are within Interim Lead Counsel's discretion.

12

6.2     Notice shall be provided in accordance with Rule 23, based on direction from the Court. Plaintiffs shall provide to the Settling Defendants for review and comment any proposed Notice for Court approval, at least five (5) business days prior to submission to the Court of such Notice. The cost of providing Notice to Settlement Class Members in the manner set forth above shall be paid out of the Settlement Fund, and the Claims Administrator shall administer dissemination of the Notice, under the direction of Interim Lead Counsel. Provided Defendants comply with their obligations under section 8.2, Settlement Class Members shall have no recourse as to the Settling Defendants or counsel for the Settling Defendants with respect to any claims they may have that arise from any failure of the notice process

6.3     If Interim Lead Counsel reach settlement with one or more other defendants in the Action, Interim Lead Counsel may, in their discretion and subject to Court approval, combine the Settlement Class Notices to Settlement Class Members.

6.4     Interim Lead Counsel will be responsible for developing a Plan of Allocation to be approved by the Court. Interim Lead Counsel shall provide the Plan of Allocation to the Settling Defendants at least five (5) business days before it is submitted to the Court. The Settling Defendants shall take no position with respect to any proposed Plan of Allocation.

6.5     Interim Lead Counsel shall request that after notice is given to the Settlement Class, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Action as set forth herein. At or after the Settlement Hearing, Interim Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Award and, if requested, the Plaintiffs' Service Award.

7.     **Releases**

7.1     Upon the Effective Date, Plaintiffs and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment and Order of Dismissal shall have,

13

fully, finally, and forever released, relinquished, and discharged against the Releasees (whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release Form) any and all Released Claims (including, without limitation, Unknown Claims). The Settling Defendants and Plaintiffs acknowledge, and each of the Settlement Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of Section 1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part. The releases set forth herein are to be construed pursuant to Ohio law as set forth in Paragraph 12.16. This Stipulation is expressly intended to absolve the Settling Defendants of any claims for contribution, indemnification or similar claims from other Defendants in the Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the laws of any jurisdiction that might be construed or deemed to apply to any claims for contribution, indemnification or similar claims against the Settling Defendants.

7.2    Upon the Effective Date, Plaintiffs and each of the Settlement Class Members and anyone claiming through or on behalf of them, shall be permanently barred and enjoined from the commencement, assertion, institution, maintenance, prosecution, or enforcement of any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or forum of any kind, asserting any of the Released Claims against the Releasees or Defense counsel and any claims arising out of, relating to, or in connection with the defense, settlement, or resolution of the Action or the Released Claims, except for claims relating to the enforcement of the Settlement.

7.3    Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished,

14

and discharged each and every one of Plaintiffs' Counsel in this matter, including Interim Lead

Counsel, and each and all of the Settlement Class Members, from all claims (including, without

limitation, unknown claims) arising out of, relating to, or in connection with, the institution,

prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for

claims relating to the enforcement of the Settlement.

8.   **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

8.1     The Claims Administrator, subject to such supervision and direction of the Court

or Interim Lead Counsel, shall provide Notice of the Settlement to the Settlement Class, shall

administer and calculate the claims submitted by Settlement Class Members pursuant to the Plan

of Allocation, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

8.2     Within 14 business days of the Court's entry of the Preliminary Approval Order,

the Settling Defendants shall provide or cause to be provided to the Claims Administrator a list

of names and e-mail and U.S. mail addresses reasonably available in electronic form of all

members of the Settlement Class who made at least one online purchase of contact lenses from

Arlington Contact Lens Service, Inc. or National Vision, Inc. from March 10, 2010 through the

date of the Stipulation of Settlement ("Consumer Lists").  Plaintiffs shall use reasonable best

efforts to obtain from 1-800 a list of names and e-mail and U.S. mail addresses of members of

the Settlement Class who made at least one online purchase of contact lenses from 1-800.

8.3     In accordance with the schedule approved by the Court, Interim Lead Counsel

will cause the Claims Administrator to provide notice in accordance with the procedure and

schedule approved by the Court.  The cost of providing such notice shall be paid out of the

Settlement Fund.

8.4     The Settlement Fund shall be applied as follows:

      (a)     to pay all Class Notice and Administration Expenses;

      (b)     to pay the Taxes and Tax Expenses;

      (c)     to pay the Fee and Expense Award subject to the approval of the Court;

      (d)     to pay any Plaintiffs' Service Award subject to the approval of the Court;

and

      (e)     after the Effective Date, to distribute the Net Settlement Fund to

Authorized Claimants pursuant to the Stipulation and the Plan of Allocation, as approved by the Court.

8.5     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

8.6     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release Form postmarked or submitted electronically by the date specified in the Preliminary Approval Order, or such other time as may be set by the Court (the "Bar Date"), signed under penalty of perjury and supported by such documents, if any, as are specified in the Proof of Claim and Release Form.

8.7     Except as otherwise ordered by the Court, all Settlement Class Members who fail to submit a Proof of Claim and Release Form by the Bar Date, or such other period as may be ordered by the Court, or who submit a Proof of Claim and Release Form that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment and Order of Dismissal.

Notwithstanding the foregoing, Interim Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.

8.8     The Claims Administrator shall calculate the claims of Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. The Settling Defendants will have no involvement in reviewing or challenging claims. Following the Effective Date, the Claims Administrator shall distribute the Net Settlement to Authorized Claimants pursuant to the Plan of Allocation.

8.9     Interim Lead Counsel will be responsible for developing a Plan of Allocation to be approved by the Court.

8.10    Other than in the event of the termination of the Settlement pursuant to Paragraph 5.1 or as provided in Paragraphs 10.2 and 10.4, the Settling Defendants shall not have a reversionary interest in the Net Settlement Fund. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial date of distribution of the Net Settlement Fund, the Claims Administrator shall, if economically feasible, allocate such balance among Authorized Claimants in an equitable and economic fashion. These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is too small to distribute in an economically feasible manner, and any such remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Interim Lead Counsel and approved by the Court.

8.11    The finality of the Court's Judgment and Order of Dismissal approving the Stipulation shall not be conditioned on any ruling by the Court concerning the Plan of Allocation

17

of the Net Settlement Fund. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement Agreement or affect or delay the Effective Date or the effectiveness or finality of the Judgment and Order of Dismissal and the release of the Released Claims.

8.12    No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, NVI/AC Lens, the Settling Defendants' counsel, or the Claims Administrator based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or otherwise as further ordered by the Court. This provision does not include any claim by any party for breach of this Stipulation.

9.    **Plaintiffs' Counsel's Attorneys' Fees, Costs, Charges and Expenses**

9.1    Interim Lead Counsel may submit an application or applications (the "Fee and Expense Application") to the Court for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; (b) payment of expenses or charges resulting from the institution and/or prosecuting the Action; and (c) any interest on such attorneys' fees and expenses as may be awarded by the Court at the same rate and for the same periods as earned by the Settlement Fund (until paid). Any and all such fees, expenses, and charges awarded by the Court (the "Fee and Expense Award"), shall be payable solely out of the Settlement Fund.

9.2    Plaintiffs may submit an application or applications to the Court (the "Plaintiffs' Service Award Application") for an award for their time and expense in representing the Settlement Class. Any such amounts awarded to Plaintiffs, as approved by the Court (the "Plaintiffs' Service Award"), shall be payable solely out of the Settlement Fund.

9.3    The Fee and Expense Award shall be paid to Interim Lead Counsel from the Settlement Fund, as ordered, immediately following entry of an order by the Court granting such

18

award, notwithstanding the existence of any appeal or potential for appeal thereof.  Interim Lead Counsel shall thereafter allocate, subject to the conditions below, the attorneys' fees amongst counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution and/or resolution of the Litigation.  In the event that the Effective Date does not occur, or the order making the Fee and Expense Award pursuant to Paragraph 9.1 is reversed or modified by final non-appealable order, or if this Stipulation is cancelled or terminated for any reason, and in the event any part of the Fee and Expense Award has been paid, all such fees and expenses received by Plaintiffs' Counsel, plus interest earned thereon at the same rate as earned on the Settlement Fund, shall be repaid to the Escrow Account within twenty (20) business days of any such reversal or modification of the order, or such termination or rejection of the Settlement.  Any refunds required pursuant to this paragraph shall be the several obligation of each Plaintiffs' Firms receiving fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP, as a condition of receiving such fees and/or expenses on its behalf, agrees that each firm is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

       9.4      The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award or Plaintiffs' Service Award to be paid out of the Settlement Fund are not part of the Settlement, and any order or proceeding relating to the Fee and Expense Application or Plaintiffs' Service Award, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Judgment and Order of Dismissal (including the releases contained herein).

9.5     The Settling Defendants shall not have any responsibility for or liability with respect to the payment of any Fee and Expense Award to any Plaintiffs' Counsel, or with respect to the allocation among Plaintiffs' Counsel and/or any other Person who may assert a claim thereto, of any Fee and Expense Award that the Court may make in the Action.  The Settling Defendants will not take any position on any Fee and Expense Allocation that Interim Lead Counsel may file or on any request for Plaintiffs' Service Awards.

10.     **Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination**

10.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation;

(b)     the Settlement Amount has been deposited into the Escrow Account as provided by Paragraph 3.1;

(c)     no party has exercised its option to terminate the Stipulation pursuant to Paragraphs 10.2 or 10.4;

(d)     the Court has entered the Preliminary Approval Order;

(e)     the Court has entered the Judgment and Order of Dismissal that, *inter alia*, dismisses with prejudice the Action, as to the Settling Defendants;

(f)     the Settling Defendants have, within 14 days of the execution of this stipulation, produced or otherwise made available to Plaintiffs all documents that they produced to the FTC ("FTC Production"), including in electronic form, and the Settling Defendants shall have used its reasonable best efforts to produce reasonably requested transactional data that is reasonably accessible related to the subject matter of the Action, to the extent such data is not

included in the FTC Production, including in electronic form, as required under paragraphs 1 and 2 of Exhibit A;

       (g)     the Judgment and Order of Dismissal has become Final.

10.2    Plaintiffs, through Interim Lead Counsel, and the Settling Defendants, through the Settling Defendants' counsel, shall, in each of their separate discretions, have the right to terminate the Settlement set forth in this Settlement Agreement by providing written notice of their election to do so ("Termination Notice") to all other Settlement Parties within thirty (30) days of the date on which any of the following should happen: (i) the Court enters an order declining to enter the Preliminary Approval Order in any material respect; (ii) the Court enters an order refusing to approve this Settlement Agreement or any material part of it; (iii) the Court enters an order declining to enter the Judgment and Order of Dismissal in any material respect; or (iv) the Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect. Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application, Plaintiffs' Service Award Application, and/or any Plan of Allocation, or any determination on appeal from any such order, shall not provide grounds for termination of this Settlement Agreement or Settlement.

10.3    This is not a claims-made settlement; there will be no reversion. If the Stipulation is finally approved and a Judgment and Order of Dismissal has become Final, the Settling Defendants have no ability to get back any of the Settlement Amount. In the event that the Settlement Agreement is terminated, any monies paid by the Settling Defendants into the Escrow Account less the reasonable costs of Notice up to $100,000, shall be returned to the Settling Defendants within 10 business days of termination.

10.4    The Settling Defendants may terminate the Settlement, or may elect to proceed with the Settlement, if potential Settlement Class Members who exclude themselves or otherwise opt-out from participation in the Settlement would likely have been eligible to receive collectively (but for their exclusion) at least 10% of the potential distributions from the Settlement Amount.  The Settling Defendants shall have the burden of establishing that this provision has been satisfied; provided that Plaintiffs provide the Settling Defendants all information received from persons who opt-out of the Settlement in timely fashion.

10.5    Except as otherwise provided herein, in the event that the Stipulation is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall not forfeit or waive any factual or legal claim, defense, or contention in the Action.  In such event, the terms and provisions of the Stipulation, with the exception of Paragraphs 5.1, 9.3,10.5, 11.3, and any other Paragraph that expressly survives termination of the Settlement, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be returned, to the maximum extent possible, to the position that existed as of July 7, 2017.[1]  No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan of Allocation, the Fee and Expense Award, or the Plaintiffs' Service Award shall constitute grounds for cancellation or termination of the Stipulation.

---

[1] On July 7, 2017, the parties executed an antecedent, binding Term Sheet outlining the Settlement terms described herein.

11.    **Cooperation**

11.1    In consideration for the dismissal of the Action and the release of the Released Claims as against the Settling Defendants, NVI and AC Lens have agreed to provide Plaintiffs with the "Cooperation" identified on **Exhibit A** attached hereto including, but not limited to, a Declaration of Peter Clarkson, attached hereto as **Exhibit B**. The scope of Cooperation by NVI and AC Lens shall be limited to the terms set forth in Exhibit A.

11.2    Notwithstanding any other provision in this Settlement Agreement, the Settling Defendants may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection with respect to any Materials. None of the cooperation provisions are intended to, nor do they, waive any such privileges or protections. Counsel for the Settling Defendants will meet with Interim Lead Counsel as is reasonably necessary to discuss any applicable domestic or foreign privilege or protection. Any disputes regarding privilege, protection or restriction that cannot be resolved by the Settling Parties shall be reserved for resolution by the Court. If any Materials protected by the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection are accidentally or inadvertently produced, Interim Lead Counsel shall, upon notice from the Settling Defendants, promptly cease reviewing the Materials and return or destroy them within five (5) business days. Interim Lead Counsel shall also delete or destroy the portions of any other documents or work product which refer to or summarize such Materials. The production of any such Materials shall in no way be construed to have waived any privilege or protection attached to such Materials.

11.3    Unless otherwise agreed between the Settling Parties, any Materials   may be used by Plaintiffs or Interim Lead Counsel solely in connection with the prosecution of the Action, consistent with the Standard Protective Order in effect in the United States District Court for the District of Utah.  Without limiting the generality of the foregoing, Materials may not be used for the institution or prosecution of any other action or proceeding against the Settling Defendants for any other purpose whatsoever, including, but not limited to, actions or proceedings in jurisdictions outside the United States.

12.    **Miscellaneous Provisions**

12.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

12.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action and the Released Claims, or which could have been asserted with respect to the Action based on the same factual predicate.  The Settlement and all negotiations, discussions, and proceedings leading up to and in connection herewith shall not be deemed to constitute a presumption, concession, or an admission by any Settling Party of any fault, liability, or wrongdoing by it, or as to the merits of any claim or defense.

12.3    The Settling Parties and their counsel agree that, as between the Plaintiffs and the Settling Defendants, they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of the Action, and the Judgment and Order of Dismissal shall contain a finding, as between the Plaintiffs and the Settling Defendants, that all Settling Parties and their counsel complied with

24

the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

12.4    Neither the Stipulation nor the Settlement contained herein, nor any negotiations, discussions, proceedings, or acts performed or documents executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) are or may be deemed to be or may be used as admissions of, or evidence of the liability of or wrong doing by the Settling Defendants, or of any wrongdoing or liability of the Settling Defendants; or (b) are or may be deemed to be or may be used as admissions of, or evidence of, any fault or omission of the Settling Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Settling Parties agree to not make any public statements contrary to section 12.4(a) and (b). The Settling Defendants and the Settling Defendants' counsel may file the Stipulation and/or the Judgment and Order of Dismissal in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim, or in connection with any proceeding to enforce the terms of this Stipulation.

12.5    All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation, pursuant to the terms of such agreements.

12.6    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

12.7    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

12.8    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

12.9    No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

12.10    The Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

12.11    Interim Lead Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate.

12.12   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

12.13   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (a) when delivered personally to the recipient, (b) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (c) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Plaintiffs or to Interim Lead Counsel:

Scott E. Gant
BOIES SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005

If to the Settling Defendants or to the Settling Defendants' counsel:

Andrew D. Lazerow
COVINGTON & BURLING LLP
One CityCenter
850 10th Street NW
Washington, DC 20001

12.14   The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or by PDF via e-mail shall be deemed originals.

12.15   The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

12.16   The Court shall have exclusive jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the

27

jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.  The terms of the Stipulation shall be governed by and construed in accordance with the laws of the State of Ohio without regard to its conflict of law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed,

by their duly authorized attorneys, dated September 19, 2017.

*On Behalf of All Named Plaintiffs and the*
*Settlement Class:*

*On Behalf of NVI/AC LENS:*

_____
Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131

And

Carl Goldfarb
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Fax: (954) 356-0022

_____
Andrew D. Lazerow
Kuntal V. Cholera
COVINGTON & BURLING LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-5081
alazerow@cov.com
kcholera@cov.com

_____
David W. Mitchell
Brian O. O'Mara
Steven M. Jodlowski
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Fax: (619) 231-7423

29

## EXHIBIT A:  Parameters of AC Lens/NVI Cooperation Obligations

1.      AC Lens/NVI shall produce or otherwise make available to plaintiffs all documents that AC Lens/NVI produced to the FTC ("FTC Production"), including in electronic form.  At Plaintiffs' Counsel's written request and explanation, AC Lens/NVI will use its reasonable best efforts to produce additional reasonably requested and reasonably accessible documents related to the subject matter of the Action.

2.      AC Lens/NVI shall use its reasonable best efforts to produce reasonably requested transactional data that is reasonably accessible related to the subject matter of the Action, to the extent such data is not included in the FTC Production, including in electronic form.  AC Lens/NVI shall use reasonable best efforts to make available its current personnel at reasonable times, to assist Plaintiffs' Counsel in understanding AC Lens/NVI's transactional data.

3.      AC Lens/NVI shall make available up to two (2) current AC Lens/NVI employees for interviews of reasonable duration with Plaintiffs' Counsel and/or their experts, including Peter Clarkson.

4.      AC Lens/NVI shall use its reasonable best efforts to make available up to two (2) current AC Lens/NVI employees for the preparation of one declaration or affidavit per individual, including Peter Clarkson.  At Plaintiffs' Counsel's written request and explanation, AC Lens/NVI shall use its reasonable best efforts to produce additional reasonably requested declarations or affidavits.

5.      AC Lens/NVI shall use its reasonable best efforts to make available for depositions up to two (2) current AC Lens/NVI employees, including Peter Clarkson.  One of the depositions requested may be a 30(b)(6) deposition of AC Lens and/or NVI on topics related to the subject matter of the Action, subject to the Federal Rules of Civil Procedure and the local rules; provided, however, that Plaintiffs shall notify AC Lens/NVI, in advance of any depositions, of the topics that Plaintiffs may pursue at a 30(b)(6) deposition in order to minimize duplicative depositions of individuals that may be deposed in both their individual and representative capacities.

6.      AC Lens/NVI shall use its reasonable best efforts to make available up to two (2) AC Lens/NVI employees for testimony at trial, including Peter Clarkson; provided, however, that, at least two months in advance of any such trial, Plaintiffs' Counsel notifies AC Lens/NVI in writing of the witnesses Plaintiffs may call as witnesses at trial.

7.      All cooperation shall be coordinated in such a manner so as to avoid to the extent practicable and feasible duplication and expense, including, but not limited to, duplication that might arise as a result of discovery efforts by other parties in the Action.

8.      None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection.  Nothing in this Agreement shall impose on AC Lens/NVI an obligation to produce or provide any materials or information protected from disclosure by the work-product doctrine, the attorney-client privilege, and/or any other applicable privilege or protection.

9.     The information and materials provided by AC Lens/NVI's Counsel may be utilized by Plaintiffs or Plaintiffs' Counsel solely to assist in the prosecution of the Action, including any appeals.  Any documents, declarations, affidavits, deposition testimony, and information provided pursuant to this provision shall be covered by the protective order in effect in the Action, or, if no protective order is in effect, shall be maintained as highly confidential and available only to Plaintiffs' Counsel and AC Lens/NVI's Counsel.

EXHIBIT B:  DECLARATION OF PETER CLARKSON

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J. Thompson, et al., Individually and on Behalf of All Others Similarly Situated | Case No.: 2:16-cv-01183 |
| Plaintiffs, | DECLARATION OF PETER CLARKSON |
| vs. | Judge Tena Campbell |
| | Magistrate Judge Dustin B. Pead |
| 1-800 Contacts, Inc., et al., | |
| Defendants. | |

1

I, Peter Clarkson, declare as follows based upon my personal knowledge:

1.     I am the founder, President, and CEO of Arlington Contact Lens Service, Inc.  I was affiliated with Arlington Contact Lens Service, Inc. during the times at which the material events described below occurred.

2.     In 2010, 1-800 Contacts, Inc. ("1-800 Contacts") contacted Arlington Contact Lens, Inc. ("AC Lens") and threatened expensive and protracted trademark litigation related to keyword advertising.  At that time, prior to the purchase of AC Lens by National Vision, Inc., AC Lens could not afford to defend such a case.  1-800 Contacts sent AC Lens a document entitled "settlement agreement."  AC Lens requested some changes to the document but 1-800 Contacts refused to make any changes.  AC Lens felt coerced into signing the confidential agreement in order to avoid potentially ruinous litigation and to stay in business.

3.     It is now apparent that 1-800 Contacts entered into similar agreements with other ecommerce competitors in the online sale of contact lenses.  AC Lens currently believes that these settlement agreements likely prevented consumers from seeing ads for companies, including AC Lens, that typically sold contact lenses online for prices below the prices charged by 1-800 Contacts.  These agreements also likely enabled 1-800 Contacts to charge prices higher than it would have been able to charge absent the agreements.


        I declare under penalty of perjury that the foregoing is true and correct.  Executed on this _____ day of September, 2017

_____
Peter Clarkson
President and CEO
Arlington Contact Lens Service, Inc.