# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J THOMPSON, et al., Individually and on Behalf of All Others Similarly Situated, | No. 2:16-cv-01183 |
| Plaintiffs, | <u>CLASS ACTION</u> |
| vs. | Honorable Judge Tena Campbell |
| 1-800 CONTACTS, INC., et al., | Honorable Magistrate Judge Dustin B. Pead |
| Defendants. | STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS VISION DIRECT, INC., WALGREENS BOOTS ALLIANCE, INC., AND WALGREEN CO. |

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT.........................1

II.    WAG/VD'S DENIALS OF WRONGDOING AND LIABILITY........................2

III.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT..........................2

         1.     Definitions..........................................................................2

         2.     CAFA Notice ....................................................................10

         3.     The Settlement .................................................................10

               a.     The Settlement Fund ...........................................10

               b.     The Escrow Agent................................................11

         4.     Taxes ...............................................................................12

         5.     Refund Upon Termination of Settlement.........................13

         6.     Preliminary Approval Order and Settlement Hearing ..............14

         7.     Releases...........................................................................15

         8.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund...............16

         9.     Plaintiffs' Counsel's Attorneys' Fees, Costs, Charges and Expenses ..........................................................................19

        10.    Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination ...................................................................21

        11.    Cooperation.....................................................................24

        12.    No Other Discovery .........................................................25

        13.    Miscellaneous Provisions.................................................26

This Stipulation and Agreement of Settlement (the "Stipulation" or the "Settlement Agreement"), dated September 12, 2019 (the "Execution Date"), submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure embodies a settlement (the "Settlement") made and entered into by and among: (i) J Thompson, Iysha Abed, Daniel J. Bartolucci, Alexa Bean, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, and Edward Ungvarsky (collectively, "Plaintiffs") for themselves and on behalf of each Settlement Class Member, on the one hand, and (ii) Vision Direct, Inc. ("Vision Direct"), Walgreens Boots Alliance, Inc. and Walgreen Co. ("Walgreens," collectively with "Vision Direct" referred to as "WAG/VD"), on the other hand, by and through their counsel of record in the above-captioned litigation pending in the United States District Court for the District of Utah and any other actions that may be transferred or consolidated into this litigation pursuant to the Court's May 10, 2017 Order Appointing Interim Class Counsel (the "Action"). This Stipulation is intended by the parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section III.1 below.

## I. PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Interim Lead Counsel believe Plaintiffs' claims asserted in the Action have substantial merit, but also have taken into account the uncertain outcome and risks of further litigation. Interim Lead Counsel believe that entering into the Settlement at this time, particularly in light of the monetary recovery as well as the cooperation to be provided by WAG/VD to Interim Lead Counsel, confers substantial benefits upon the Settlement Class. Based on their evaluation, Interim

Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Plaintiffs and the Settlement Class, and is fair, reasonable, and adequate.

## II.    WAG/VD'S DENIALS OF WRONGDOING AND LIABILITY

WAG/VD has denied and continues to deny that it has violated any laws and maintains that its conduct was at all times proper and in compliance with all applicable provisions of law in all material respects.  WAG/VD has denied and continues to deny that anyone suffered monetary harm or suffered any other injury as a result of any conduct by WAG/VD.  WAG/VD has denied and continues to deny specifically each, every, and all of the claims and contentions of wrongful conduct by WAG/VD alleged in the Action, along with all charges of wrongdoing or liability against it arising out of any of the conduct alleged, or that could have been alleged, in the Action.

## III.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs, on the one hand, and WAG/VD, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released as to all Releasees, and the Action shall be settled, compromised, and dismissed with prejudice as to the Releasees, without costs, except as stated herein, and releases extended as set forth in this Settlement Agreement, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Amended Complaint" means the Consolidated Amended Complaint, dated May 31, 2017, filed in this Action, ECF No. 72.

1.2    "Authorized Claimant" means any Settlement Class Member who submits a timely and valid Proof of Claim and Release Form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3    "Bar Date" is defined in Paragraph 8.5.

1.4    "Claims Administrator" means a qualified administrator selected by Interim Lead Counsel and approved by the Court.

1.5    "Class Notice and Administration Expenses" means the fees and expenses reasonably and actually incurred in connection with providing Notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release Forms, and paying escrow fees and costs, if any.

1.6    "Advertising Agreement Counterparties" means 1-800 Contacts, Inc. and the entities identified in paragraphs 56 and 57 of the Amended Complaint: Vision Direct, Coastal Contacts, EZ Contacts, Lensfast, AC Lens, Lenses for Less, Contact Lens King, Empire Vision, Tram Data (ReplaceMyContacts), Walgreens, Web Eye Care, Standard Optical, Memorial Eye, and Luxottica, and their predecessors, successors and assigns, direct and indirect parents, subsidiaries, and affiliates.

1.7    "Court" means the United States District Court for the District of Utah.

1.8    "Defendants" means any and all parties named as defendants in the Amended Complaint and/or in any further amended complaint or pleading filed in this Action.

1.9     "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 10.1 of the Stipulation have been met and have occurred.

1.10    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which the Settlement Amount shall be deposited by or on behalf of WAG/VD in accordance with the schedule specified in Paragraph 3.1.

1.11    "Execution Date" means the date after which all Settling Parties have executed this Settlement Agreement.

1.12    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successors.

1.13    "Fee and Expense Application" is defined in Paragraph 9.1.

1.14    "Fee and Expense Award" is defined in Paragraph 9.1.

1.15    "Final" means when the last of the following with respect to the Judgment and Order of Dismissal shall occur: (i) the expiration of the time to file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed under Federal Rule of Civil Procedure 59(e) or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that

concerns only the issue of attorneys' fees and expenses, any Plaintiffs' Service Awards, or any Plan of Allocation of the Net Settlement Fund.

1.16    "Future Litigation" means any litigation, arbitration, or method of dispute resolution that is directly related to any claim, allegation, or argument (a) asserted at any time in the Action, whether or not pled in the Amended Complaint, or which could have been brought in the Action; (b) which would be based in whole or in part on any of the claims or allegations asserted at any time in the Action, whether or not pled in the Amended Complaint; and (c) which would fall within the definition herein of Released Claims if the claim were asserted by one of the Plaintiffs.   For the avoidance of doubt, Future Litigation includes any claim or allegation concerning or related to alleged collusion, as well as any cause of action arising under 15 U.S.C. §§ 1 and 2.

1.17    "Interim Lead Counsel" means Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP.

1.18    "Judgment and Order of Dismissal" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, in a form agreed to by the Settling Parties.

1.19    "WAG/VD" means Vision Direct, Inc., Walgreens Boots Alliance, Inc. and Walgreen Co., and each of its respective past or present direct and indirect subsidiaries, parents (including holding companies), affiliates, associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, joint ventures, predecessors, successors, agents, attorneys, legal or other representatives, insurers (including reinsurers and co-

insurers), assigns, assignees, and current and former employees, officers, and directors of any other of the foregoing entities.

1.20   "Materials" means any document, information, or materials, in any format, whether oral or written, that may be requested and/or produced pursuant to this Settlement Agreement.

1.21   "Net Settlement Fund" means the Settlement Fund less: (i) the amount of the Fee and Expense Award and any Plaintiffs' Service Award, if requested, and to the extent allowed by the Court; (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.22   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action to be sent to Settlement Class Members, as approved by the Court.

1.23   "Person" means a natural person, individual, corporation, partnership, limited partnership, association, pension fund, mutual fund, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, beneficiaries, trustees, or assignees, and any other entity on behalf of whom the person has a legal right to make or release a claim.

1.24   "Plaintiffs" means J Thompson, Iysha Abed, Daniel J. Bartolucci, Alexa Bean, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, and Edward Ungvarsky for themselves and on behalf of each Settlement Class Member.

1.25   "Plaintiffs' Counsel" means Interim Lead Counsel and any counsel who appeared on behalf of Plaintiffs in the Action.

1.26   "Plaintiffs' Service Award" is defined in Paragraph 9.2.

1.27    "Plaintiffs' Service Award Application" is defined in Paragraph 9.2.

1.28    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund pursuant to which the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation, and WAG/VD shall have no responsibility or liability with respect to the Plan of Allocation.

1.29    "Preliminary Approval Order" means the order granting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation.

1.30    "Proof of Claim and Release Form" means the form as eventually approved by the Court for such use.

1.31    "Released Claims" shall be any and all manner of claims, debts, demands, rights, interests, actions, suits, causes of action, whether class, individual or otherwise in nature; fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, direct or indirect claims or demands of rescission, damages, interest, attorneys' fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule or regulation, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, which Releasors, whether directly, representatively, derivatively, or in any other capacity, now or ever had against Releasees through date of execution of the settlement agreement, arising from or relating in any way to any conduct that was alleged, or could have been alleged, based on the predicate of the Action, under the Sherman Antitrust Act, or any federal, state, local, statutory or common law, in equity, or on any other law, statute, rule or regulation, or the law of any foreign jurisdiction.

1.32    "Releasees" means WAG/VD.   Exclusive of WAG/VD, "Releasees" does not include any current Defendant in the Action or any entity listed in the chart in paragraph 56 of the Amended Complaint, which has not been named as a defendant in the Action.

1.33    "Releasors" means the named Plaintiffs in the Action and each and every Settlement Class Member and his, her, their, or its respective attorneys, agents, heirs, executors, beneficiaries, estates, and assigns, including any Person succeeding to their respective interest.

1.34    "Settlement Amount" means twelve million U.S. dollars and no cents ($12,000,000.00).

1.35    "Settlement Class" means all persons in the United States who made at least one online purchase of contact lenses from 1-800 Contacts, Inc. ("1-800") or WAG/VD from January 1, 2004 to the date of execution of the settlement agreement, who do not timely exclude himself, herself, or themselves from the Class.   Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged Advertising Agreement Counterparties, governmental entities and instrumentalities of government, states and their subdivisions, agencies and instrumentalities.

1.36    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class.

1.37    "Settlement Class Period" means the period from January 1, 2004 through date of execution of the Settlement Agreement.

1.38    "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon after being transferred to the Escrow Account.

1.39    "Settlement Hearing" is defined in Paragraph 6.5.

1.40    "Settling Parties" means Plaintiffs and WAG/VD.

1.41    "Taxes" is defined in Paragraph 4.3.

1.42    "Tax Expenses" is defined in Paragraph 4.3.

1.43    "Termination Notice" is defined in Paragraph 10.3.

1.44    "Unknown Claims" means any and all Released Claims against the Releasees which the Releasors do not know or suspect to exist in his, her, their, or its favor as of the Effective Date, which if known by the Releasors or the Releasees might have affected his, her, their, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, by operation of the Judgment and Order of Dismissal, upon the Effective Date, the Releasors shall have expressly waived, and each Settlement Class Member shall be deemed to have waived and by operation of the Judgment and Order of Dismissal shall have expressly waived, the provisions, rights, and benefits of Cal. Civ. Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code Section 1542.  The Releasors and the Releasees may hereafter discover facts other than or different from those which he, she, they, or it now knows or believes to be true with respect to the subject matter of the Released Claims.  Nevertheless, the Releasors shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member upon the Effective Date

shall be deemed to have and by operation of the Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all of their respective Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

### 2.    CAFA Notice

2.1    WAG/VD shall bear the costs and responsibility of serving notice of the settlement upon the "Appropriate State Official" and "Appropriate Federal Official," as those terms are defined by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a), and shall do so in a timely manner.

### 3.    The Settlement

#### a.    The Settlement Fund

3.1    WAG/VD shall cause fifty percent (50%) of the Settlement Amount to be deposited into the Escrow Account within fifteen (15) business days of the Court's entry of the Preliminary Approval Order, provided that the time by which WAG/VD must pay into the Escrow Account does not begin to run until Interim Lead Counsel has provided WAG/VD with such information as WAG/VD may require to complete the wire transfer.  WAG/VD shall cause the remaining fifty percent (50%) of the Settlement Amount to be deposited into the Escrow Account within ten (10) business days after the entry of a final order and judgment by the Court approving the Stipulation.

3.2    Except as required by Paragraph 3.1 concerning payment of the Settlement Amount, and except as provided in Paragraph 5.1 concerning refund upon termination of the

Settlement, WAG/VD shall have no responsibility for any other costs, including any attorneys' fees and expenses or costs of class notice and claims administration, but all such fees, expenses, and costs shall be paid from the Settlement Amount, as approved by the Court.

3.3     Prior to the Effective Date and without further order of the Court, up to $250,000 of the Settlement Fund may be used by Plaintiffs' Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice to the Class, locating Class Members, assisting with the submission of claims, processing Proof of Claim and Release forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any ("Notice and Administration Expenses"). After the Effective Date, Plaintiffs' Counsel may pay all further reasonable Notice and Administration Expenses, regardless of amount, without further order of the Court.

### b.     The Escrow Agent

3.4     The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in the Stipulation; (b) by an order of the Court; or (c) with the written agreement of counsel for the Settling Parties.

3.5     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. WAG/VD shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent or any transaction executed by the Escrow Agent.

3.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time

as such funds shall be distributed in their entirety in accordance with Paragraphs 8.3, 8.4, 8.7, and 8.9.

### 4. Taxes

4.1     The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1 and agree not to take any position for tax purposes inconsistent therewith.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Section 4, including the "relation-back election" (as defined in Treasury Regulation Section 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2     For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file, or cause to be filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation Section 1.468B-2(k)).

4.3     All (a) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on the Settlement Amount, including any taxes or tax detriments that may be imposed upon the Settling Parties or their counsel with respect to any income earned on the Settlement Amount for any period during which the Settlement Fund does not qualify as a

"Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this Section 4 (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section 4) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Settling Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Escrow Account without prior approval of WAG/VD, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation Section 1.468B-2(l)(2)). The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 4.

**5.      Refund Upon Termination of Settlement**

5.1      In the event the Settlement: (i) is not approved; (ii) is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment and Order of Dismissal is reversed or vacated following any appeal taken therefrom; or (iii) is successfully collaterally attacked, any portion of the Settlement Fund that has been deposited into the Escrow Account by WAG/VD shall be returned to WAG/VD within thirty (30) calendar days,

except for up to $100,000 (One-Hundred Thousand Dollars and No Cents) of sums actually paid from the Settlement Fund for the reasonable costs of Notice and Administration Expenses.

### 6. Preliminary Approval Order and Settlement Hearing

6.1    Interim Lead Counsel shall submit the Stipulation to the Court and shall apply for entry of the Preliminary Approval Order.  The timing of these submissions shall be determined by Interim Lead Counsel.

6.2    Notice shall be provided in accordance with Rule 23, based on direction from the Court.  Plaintiffs shall provide to WAG/VD for review and comment any proposed motions or other papers in connection with this Settlement Agreement, including without limitation, the motion for Preliminary Approval and motion for Judgment and Order of Dismissal, that is to be submitted to the Court for approval at least five (5) business days prior to its submission to the Court.  The cost of providing Notice to Settlement Class Members in the manner set forth above shall be paid out of the Settlement Fund, and the Claims Administrator shall administer dissemination of the Notice, under the direction of Interim Lead Counsel.  Provided WAG/VD complies with its obligations under this Settlement Agreement, Settlement Class Members shall have no recourse as to WAG/VD or counsel for WAG/VD with respect to any claims they may have that arise from any failure of the notice process.

6.3    Interim Lead Counsel may, in their discretion and subject to Court approval, combine the Settlement Class Notices to Settlement Class Members for settlements reached with one or more other defendants.

6.4    Interim Lead Counsel will be responsible for developing a Plan of Allocation to be approved by the Court.

- 14 -

6.5     Interim Lead Counsel shall request that after Notice is given to the Settlement Class, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Action as set forth herein.  At or after the Settlement Hearing, Interim Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Award and, if requested, the Plaintiffs' Service Award.

**7.     Releases**

7.1     Upon the Effective Date, Plaintiffs and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged against the Releasees (whether or not such Settlement Class Member executes and delivers a Proof of Claim Form) any and all Released Claims (including, without limitation, Unknown Claims).  WAG/VD and Plaintiffs acknowledge, and each of the Settlement Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of Section 1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.  The releases set forth herein are to be construed pursuant to Illinois law as set forth in Paragraph 13.20.  This Settlement is expressly intended to absolve WAG/VD of any claims for contribution, indemnification, or similar claims from other Defendants in the Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the laws of any jurisdiction that might be construed or deemed to apply to any claims for contribution, indemnification, or similar claims against WAG/VD.

7.2     Upon the Effective Date, Plaintiffs and each of the Settlement Class Members and anyone claiming through or on behalf of them, shall be permanently barred and enjoined from the

commencement, assertion, institution, maintenance, prosecution, or enforcement of any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or forum of any kind, asserting any of the Released Claims against the Releasees or Defense counsel and any claims arising out of, relating to, or in connection with the defense, settlement, or resolution of the Action or the Released Claims, except for claims relating to the enforcement of the terms of the Settlement Agreement.

7.3     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and every one of Plaintiffs' Counsel in this matter, including Interim Lead Counsel, and each and all of the Settlement Class Members, from all claims (including, without limitation, unknown claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for claims relating to the enforcement of the terms of the Settlement Agreement.

7.4     The Settling Parties each acknowledge that they each consider it to be a material term of this Settlement Agreement that Plaintiffs and WAG/VD will be bound by the provisions of paragraphs 7.1 through 7.3.

**8.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

8.1     The Claims Administrator, subject to such supervision and direction of the Court or Interim Lead Counsel, shall provide Notice of the Settlement to the Settlement Class, shall administer and calculate the claims submitted by Settlement Class Members pursuant to the Plan of Allocation, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

8.2     In accordance with the schedule approved by the Court, Interim Lead Counsel will cause the Claims Administrator to provide notice in accordance with the procedure and schedule approved by the Court.  The cost of providing such notice shall be paid out of the Settlement Fund.

8.3     The Settlement Fund shall be applied as follows:

(a)     to pay all Class Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses;

(c)     to pay the Fee and Expense Award subject to the approval of the Court;

(d)     to pay any Plaintiffs' Service Award subject to the approval of the Court; and

(e)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants pursuant to the Stipulation and the Plan of Allocation, as approved by the Court.

8.4     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

8.5     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release Form postmarked or submitted electronically by the date specified in the Preliminary Approval Order, or such other time as may be set by the Court (the "Bar Date"), signed under penalty of perjury, and supported by such documents, if any, as are specified in the Proof of Claim and Release Form.

8.6     Except as otherwise ordered by the Court, all Settlement Class Members who fail to submit a Proof of Claim and Release Form by the Bar Date, or such other period as may be

ordered by the Court, or who submit a Proof of Claim and Release Form that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment and Order of Dismissal. Notwithstanding the foregoing, Interim Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.

8.7   The Claims Administrator shall calculate the claims of Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  WAG/VD will have no involvement in reviewing or challenging claims.  Following the Effective Date, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation.  These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is *de minimis*, and any such remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Interim Class Counsel and approved by the Court.

8.8   Interim Lead Counsel will be responsible for developing a Plan of Allocation to be approved by the Court.

8.9   Other than in the event of the termination of the Settlement pursuant to Paragraph 5.1 or as provided in Paragraphs 10.3 and 10.4, WAG/VD shall not have a reversionary interest in the Net Settlement Fund.

8.10    The finality of the Court's Judgment and Order of Dismissal approving the Stipulation shall not be conditioned on any ruling by the Court concerning the Plan of Allocation. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement Agreement or affect or delay the Effective Date or the effectiveness or finality of the Judgment and Order of Dismissal and the release of the Released Claims.

8.11    No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, WAG/VD, WAG/VD' counsel, or the Claims Administrator based on distributions made substantially in accordance with this Stipulation and the Settlement contained herein, or the Plan of Allocation. This provision does not include any claim by any party for breach of this Stipulation.

## 9.    Plaintiffs' Counsel's Attorneys' Fees, Costs, Charges and Expenses

9.1    Interim Lead Counsel may submit an application or applications (the "Fee and Expense Application") to the Court for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; (b) payment of expenses or charges resulting from the institution and/or prosecution of the Action; and (c) any interest on such attorneys' fees and expenses as may be awarded by the Court at the same rate and for the same periods as earned by the Settlement Fund (until paid).  Any and all such fees, expenses, and charges awarded by the Court (the "Fee and Expense Award"), shall be payable solely out of the Settlement Fund.

9.2    Plaintiffs may submit an application or applications to the Court (the "Plaintiffs' Service Award Application") for awards for their time and expenses in representing the Settlement Class.  Any such amounts awarded to Plaintiffs, as approved by the Court (the "Plaintiffs' Service Awards"), shall be payable solely out of the Settlement Fund.

9.3     The Fee and Expense Award shall be paid to Interim Lead Counsel from the Settlement Fund, as ordered, immediately following entry of an order by the Court granting such award, notwithstanding the existence of any appeal or potential for appeal thereof.  Interim Lead Counsel shall thereafter allocate, subject to the conditions below, the attorneys' fees amongst counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution and/or resolution of the Litigation.  In the event that the Effective Date does not occur, or the Fee and Expense Award is reversed or modified by a final non-appealable order, or the Settlement Agreement is canceled or terminated for any reason, and in the event any part of the Fee and Expense Award has been paid to any extent, the fees and expenses received by Plaintiffs' Counsel, plus interest earned thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification, shall be repaid to the Escrow Account within twenty (20) business days of any such reversal or modification of the order, or such termination or rejection of the Settlement.  Any refunds required pursuant to this paragraph shall be the several obligation of each Plaintiffs' Firms receiving fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP, as a condition of receiving such fees and/or expenses on its behalf, agree that each firm is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

9.4     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award or Plaintiffs' Service Awards to be paid out of the Settlement Fund are not part of the Settlement, and any order or proceeding relating to the Fee and Expense Application or Plaintiffs' Service Awards, or any appeal from any order relating thereto or reversal or

modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Judgment and Order of Dismissal (including the releases contained herein).

9.5     WAG/VD shall not have any responsibility for or liability with respect to the payment of any Fee and Expense Award to any Plaintiffs' Counsel, or with respect to the allocation among Plaintiffs' Counsel and/or any other Person who may assert a claim thereto, of any Fee and Expense Award that the Court may make in the Action.

### 10.    Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination

10.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation;

(b)     the Court has entered the Preliminary Approval Order;

(c)     the Settlement Amount has been deposited into the Escrow Account as provided by Paragraph 3.1;

(d)     no party has exercised its option to terminate the Stipulation pursuant to Paragraphs 10.2 or 10.4;

(e)     the Court has entered the Judgment and Order of Dismissal that, *inter alia*, dismisses with prejudice the Action, as to WAG/VD;

(f)     WAG/VD has, within 60 calendar days of the execution of this stipulation, made reasonable best efforts to produce or otherwise make available to Plaintiffs all documents, data or other materials described in Exhibit A, except as otherwise specified therein;

(g)     the Judgment and Order of Dismissal has become Final.

- 21 -

10.2     Within ten (10) days of the deadline set by the Court for Settlement Class Members to submit a request for exclusion from participating in this Settlement with WAG/VD, Interim Lead Counsel shall, to the extent feasible, inform counsel for WAG/VD of (a) the amount (in U.S. dollars) of the contact lens purchases during the Settlement Class Period of each Settlement Class Member requesting exclusion; and (b) the amount (in U.S. dollars) of contact lens purchases during the Settlement Class Period by all Settlement Class Members.  In calculating these amounts, Interim Lead Counsel shall use all the data available to them (as produced by Defendants or from any other source).

10.3     WAG/VD, through WAG/VD's counsel, shall, in its sole discretion, have the right to terminate the Settlement set forth in this Settlement Agreement by providing written notice of their election to do so ("Termination Notice") to all other Settlement Parties within ten (10) days after receiving the information provided by Interim Lead Counsel under Paragraph 10.2 if the aggregate amount (in U.S. dollars) of purchases of contact lenses purchased from 1800 and WAG/VD by Settlement Class Members that seek exclusion from the Settlement Class exceeds 10% of the amount (in U.S. dollars) of contact lenses purchased by all Settlement Class Members.

10.4     Plaintiffs, through Interim Lead Counsel, and WAG/VD, through WAG/VD's counsel, shall, in the discretion of each, have the right to terminate the Settlement set forth in this Settlement Agreement by providing Termination Notice to all other Settlement Parties within thirty (30) days of the date on which any of the following should happen: (i) the Court enters an order declining to enter the Preliminary Approval Order in any material respect; (ii) the Court enters an order refusing to approve this Settlement Agreement or any material part of it; (iii) the Court enters an order declining to enter the Judgment and Order of Dismissal in any material

respect; or (iv) the Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect.   Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application, Plaintiffs' Service Award Application, and/or any Plan of Allocation, or any determination on appeal from any such order, shall not provide grounds for termination of this Settlement Agreement or Settlement.

10.5    This is not a claims-made settlement; there will be no reversion.  If the Stipulation is finally approved and a Judgment and Order of Dismissal has become Final, WAG/VD shall have no ability to get back any of the Settlement Amount.  In the event that the Settlement Agreement is terminated for any reason, any monies paid by WAG/VD into the Escrow Account less the reasonable costs of Notice up to $100,000, shall be returned to WAG/VD within 30 business days of termination.

10.6    Except as otherwise provided herein, in the event that the Stipulation is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall not forfeit or waive any factual or legal claim, defense, or contention in the Action.   In such event, the terms and provisions of the Stipulation, with the exception of Paragraphs 5.1, 9.3, 10.6, 11.3, and any other Paragraph that expressly survives termination of the Settlement, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be returned, to the maximum extent possible, to the position that existed as of the Date of the Stipulation of Settlement.  No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan

of Allocation, the Fee and Expense Award, or the Plaintiffs' Service Award shall constitute grounds for cancellation or termination of the Stipulation.

**11.   Cooperation**

11.1    In consideration for the dismissal of the Action and the release of the Released Claims as against WAG/VD, WAG/VD has agreed to provide Plaintiffs with the "Cooperation" identified on **Exhibit A.**  No additional cooperation to Plaintiffs is required by WAG/VD under this Settlement Agreement.

11.2    Notwithstanding any other provision in this Settlement Agreement, WAG/VD may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection with respect to any Materials.  None of the cooperation provisions are intended to, nor do they, waive any such privileges or protections. In accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502, WAG/VD and Plaintiffs therefore agree that if WAG/VD through inadvertence produces or provides Materials that it believes is subject to a claim of attorney-client privilege or attorney work product, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection are accidentally or inadvertently produced, WAG/VD shall give reasonably prompt written notice to Plaintiffs that the document or thing is subject to a claim of attorney-client privilege or attorney work product and request that the document or thing be returned to the producing party.  If any Materials protected by the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection are

accidentally or inadvertently produced, Interim Lead Counsel shall, upon notice from the WAG/VD, promptly cease reviewing the Materials and return or destroy them within five (5) business days.   Interim Lead Counsel shall also delete or destroy the portions of any other documents or work product which refer to or summarize such Materials.  The production of any such Materials shall in no way be construed to have waived any privilege or protection attached to such Materials.

11.3    Unless otherwise agreed between the Settling Parties, any Materials may be used by Plaintiffs or Interim Lead Counsel solely in connection with the prosecution of the Action, consistent with the Stipulated Protective Order, Dkt. No. 180, in effect in this Action.  Without limiting the generality of the foregoing, Materials may not be used for the institution or prosecution of any other action or proceeding against WAG/VD for any other purpose whatsoever, including, but not limited to, actions or proceedings in jurisdictions outside the United States.

**12.    No Other Discovery**

12.1    Upon the Execution Date, neither Plaintiffs nor WAG/VD shall file motions against the other or initiate or participate in any discovery, subpoena, motion, or proceeding directly adverse to the other in connection with the Action.

12.2    Upon the Execution Date, the Settling Parties agree that all discovery-related deadlines shall be stayed, and the parties are not required to comply with any outstanding discovery requests.  The Settling Parties further agree that Plaintiffs shall file a Motion to Stay All Deadlines within three (3) days of the Execution Date.

### 13.    **Miscellaneous Provisions**

13.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

13.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action and the Released Claims, or which could have been asserted with respect to the Action based on the same factual predicate. The Settlement and all negotiations, discussions, and proceedings leading up to and in connection herewith shall not be deemed to constitute a presumption, concession, or an admission by any Settling Party of any fault, liability, or wrongdoing by it, or as to the merits of any claim or defense.

13.3    Interim Lead Counsel represent that they (i) do not currently represent any contact lens purchaser for which they intend to bring any Future Litigation against WAG/VD, (ii) have not discussed with any non-plaintiff contact lens purchaser or putative class member any Future Litigation against WAG/VD, and (iii) have not solicited any contact lens purchaser to participate in any Future Litigation against WAG/VD.

13.4    Subject to the above representations in paragraph 13.3, WAG/VD understands that Interim Lead Counsel are not otherwise restricted in their future ability to choose to represent any contact lens purchaser in connection with any claim against anyone that any such contact lens purchaser may wish to bring. The Settling Parties acknowledge that they each consider it to be a material term of this Settlement Agreement that all Settling Parties will be bound by the provisions of Paragraphs 13.4 and 13.5.

13.5    The Settling Parties and their counsel agree that, as between the Plaintiffs and WAG/VD, they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of the Action, and the Judgment and Order of Dismissal shall contain a finding, as between the Plaintiffs and WAG/VD, that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

13.6    Neither the Stipulation nor the Settlement contained herein, nor any negotiations, discussions, proceedings, or acts performed or documents executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) are or may be deemed to be or may be used as admissions of, or evidence of the liability of or wrongdoing by WAG/VD, or of any wrongdoing or liability of WAG/VD; or (b) are or may be deemed to be or may be used as admissions of, or evidence of, any fault or omission of WAG/VD in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Settling Parties agree to not make any public statements contrary to section 13.6(a) and (b).  WAG/VD and WAG/VD's counsel may file the Stipulation and/or the Judgment and Order of Dismissal in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim, or in connection with any proceeding to enforce the terms of this Stipulation.

13.7     All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation, pursuant to the terms of such agreements.

13.8     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

13.9     This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

13.10    In conjunction with Fed. R. Evid. 408, Plaintiffs and WAG/VD shall keep strictly confidential and not disclose to any third party, including specifically any counsel representing any other current, future, or former party to the Action, any confidential information or information regarding the Settling Parties' negotiation of this Settlement and/or the Settlement Agreement, unless so ordered by a court, except that the Settling Parties may file under seal any documents concerning this Settlement or the negotiation of the Settlement Agreement in connection with a motion or proceeding to enforce or contest the terms of this Settlement Agreement.  The Settling Parties acknowledge that they each consider it to be a material term of this Settlement Agreement that all Settling Parties will be bound by the provisions of this paragraph.

13.11    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

13.12   No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

13.13   The Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

13.14   Interim Lead Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate.

13.15   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

13.16   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (a) when delivered personally to the recipient, (b) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (c) five (5) business days after being mailed to the recipient by certified or registered

mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Plaintiffs or to Interim Lead Counsel:

Scott E. Gant
BOIES SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005

David W. Mitchell
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92106

If to WAG/VD or to WAG/VD's counsel:

Jeffrey C. Bank
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

13.17   The Stipulation may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument.   A complete set of executed counterparts shall be filed with the Court.   Signatures sent by facsimile or by PDF via e-mail shall be deemed originals.

13.18   The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

13.19   The Court shall have exclusive jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.   The terms of the Stipulation shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflict of law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed,

by their duly authorized attorneys, dated September 9, 2019.

DATED:  September 12, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL (Admitted *Pro Hac Vice*)
BRIAN O. O'MARA
STEVEN M. JODLOWSKI (Admitted *Pro Hac Vice*)

_____
DAVID W. MITCHELL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

DATED:  September 12, 2019

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT (Admitted *Pro Hac Vice*)
MELISSA F. ZAPPALA (Admitted *Pro Hac Vice*)

_____
SCOTT E. GANT

1401 New York Ave., NW
Washington, DC  20005
Telephone:  202/237-2727
202/237-6131 (fax)

BOIES SCHILLER FLEXNER LLP
CARL GOLDFARB (Admitted *Pro Hac Vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone:  954/356-0011
954/356-0022 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT  84101
Telephone:  801/534-1700
801/364-7697 (fax)

Counsel for Plaintiffs

DATED:  September 17, 2019

WILSON SONSINI GOODRICH &
   ROSATI, P.C.
JEFFREY C. BANK

_____
JEFFREY C. BANK

1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
ibank@wsgr.com

Attorneys for Defendants Vision Direct, Inc.,
Walgreens Boots Alliance, Inc., and Walgreen Co.

## EXHIBIT A:  WAG/VD's Cooperation Obligations

1.      Within forty-five (45) calendar days of execution of this stipulation, WAG/VD shall use its reasonable efforts to supplement its production to include transactional data through August 2019.  The data fields will correspond to the fields contained in Walgreens' earlier transactional data production.

2.      WAG/VD shall use its reasonable best efforts to provide responses to any remaining unanswered outstanding questions posed by Plaintiffs concerning WAG/VD's transactional data.

3.      For all contact lens-related campaigns run from 2004 to the present, WAG/VD shall use its reasonable best efforts to produce its Google AdWords data.

4.      WAG/VD shall use its reasonable efforts to identify, from Exhibit B to the May 8, 2009 Settlement Agreement and Mutual Release between 1-800 Contacts, Inc., Vision Direct, Inc. and drugstore.com, Inc., and Exhibit 2 to the June 29, 2010 Settlement Agreement between 1-800 Contacts, Inc. and Walgreen Co., which of the terms listed there are protected by a U.S. trademark, to identify the trademark registration, and to specify the period for which each term or phrase has enjoyed trademark protection.

5.      At Plaintiffs' request, WAG/VD shall provide reasonable cooperation in authenticating and establishing as business records documents or data produced in this litigation.

6.      WAG/VD agrees to provide a declaration from Scott Sher sufficient to establish the authenticity, including under Fed. R. Evid. 901, and admissibility, including under Fed. R. Evid. 801 or 803, of the January 24, 2008 letter from Vision Direct, through its counsel, to 1-800 Contacts, Inc.'s General Counsel.  The declarant shall state, among other things, that he reviewed the copy of the letter produced by 1-800 Contacts, bates-numbered 1-800F_00045680, that the document is an exact copy of the letter he sent to 1-800 Contacts' General Counsel on January 24, 2008, and that the letter was drafted and sent in the ordinary course of business in connection the declarant's duties for or on behalf of Vision Direct.

7.      All cooperation shall be coordinated in such a manner so as to avoid to the extent practicable and feasible duplication and expense, including, but not limited to, duplication that might arise as a result of discovery efforts by other parties in the Action.

8.      None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection.  Nothing in this Agreement shall impose on WAG/VD an obligation to produce or provide any materials or information protected from disclosure by the work-product doctrine, the attorney-client privilege, and/or any other applicable privilege or protection.