ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT 84101
Telephone: 801/534-1700
801/364-7697 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID W. MITCHELL
BRIAN O. O'MARA
STEVEN M. JODLOWSKI
ASHLEY M. KELLY
655 West Broadway, Suite 1900
Telephone: 619/231-1058
619/231-7423 (fax)
San Diego, CA 92101

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT
MELISSA F. ZAPPALA
1401 New York Ave., NW
Washington, DC 20005
Telephone: 202/237-2727
202/237-6131 (fax)
 – and –
CARL GOLDFARB
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: 954/356-0011
954/356-0022 (fax)

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| J THOMPSON, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:16-cv-01183 |
| Plaintiffs, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Honorable Judge Tena Campbell<br>Honorable Magistrate Judge Dustin B. Pead |
| 1-800 CONTACTS, INC., et al., | ) ) ) | PLAINTIFFS' MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT WITH REMAINING |
| Defendants. | ) ) ) ) ) ) | DEFENDANT 1-800 CONTACTS, INC., CONDITIONALLY CERTIFYING SETTLEMENT CLASS, APPROVING NOTICE PROGRAM AND PRELIMINARILY APPROVING PLAN OF DISTRIBUTION |

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED AND GROUNDS FOR RELIEF ............................................................1

PRELIMINARY STATEMENT ..........................................................................................1

I.    THE PROPOSED 1-800 SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ..................................................................................................................2

II.    THE PROPOSED 1-800 SETTLEMENT CLASS SHOULD BE CERTIFIED ................5

    A.    The Requirements of Rule 23(a) Are Satisfied .........................................5

        1.    Numerosity .........................................................................................5

        2.    Commonality .....................................................................................5

        3.    Typicality ...........................................................................................6

        4.    Adequacy ...........................................................................................6

    B.    The Requirements of Rule 23(b) Are Satisfied .........................................7

III.    THE PROPOSED MANNER AND FORMS OF NOTICE SHOULD BE APPROVED ..................................................................................................................8

    A.    The Proposed Manner of Notice Should Be Approved ..............................9

    B.    The Proposed Forms of Notice Should Be Approved ..............................12

IV.    THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED ........14

V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ..............................................15

VI.    CONCLUSION ................................................................................................................16

4829-8778-0021.v3

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................................5, 7, 8

*CGC Holding Co., LLC v. Broad and Cassel,*
773 F.3d 1076 (10th Cir. 2014) ...........................................................................7

*DG ex rel. Stricklin v. Devaughn,*
594 F.3d 1188 (10th Cir. 2010) ...........................................................................6

*Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.,*
No. 14-2378, 2015 WL 4523806
(D. Kan. July 27, 2015)........................................................................................4

*Gen. Tel. Co. of the Sw. v. Falcon,*
457 U.S. 147 (1982).............................................................................................6

*Gooch v. Life Inv'rs. Ins. Co. of Am.,*
672 F.3d 402 (6th Cir. 2012) .............................................................................12

*Hershey v. ExxonMobil Oil Corp.,*
No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803
(D. Kan. Oct. 26, 2012)......................................................................................14

*In re Crocs, Inc. Sec. Litig.,*
No. 07-CV-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593
(D. Colo. Aug. 28, 2013) .....................................................................................8

*In re Domestic Airline Travel Antitrust Litig.,*
322 F. Supp. 3d 64 (D.D.C. 2018) ...............................................................10, 11

*In re Equifax Customer Data Sec. Breach Litig.,*
No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 7841
(N.D. Ga. Jan. 13, 2020) ..............................................................................10, 12

*In re Motor Fuel Temp. Sales Practices Litig.,*
No. 07-MD-1840-KHV, 2011 WL 4431090
(D. Kan. Sept. 22, 2011) ......................................................................................2

*In re Optical Disk Drive Prods. Antitrust Litig.,*
No. 3:10-md-2143 RS, 2016 WL 7364803
(N.D. Cal. Dec. 19, 2016) .............................................................................10, 12

*In re Sprint Corp. ERISA Litig.,*
443 F. Supp. 2d 1249 (D. Kan. 2006) ................................................................14

Page

*In re Urethane Antitrust Litig.*,
   237 F.R.D. 440 (D. Kan. 2006)............................................................5, 6, 8

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) .............................................................5, 8

*In re Urethane Antitrust Litig.*,
   No. 04-1616-JWL, 2016 U.S. Dist. LEXIS 99839
   (D. Kan. July 29, 2016)..........................................................................14

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) .................................................................2

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................9

*Morgan v. Public Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...................................................9

*Ogden v. Figgins*,
   315 F.R.D. 670 (D. Kan. 2016)...............................................................6

*Rajagopalan v. Meracord, LLC*,
   No. 12-CV-05657-BHS, 2015 U.S. Dist. LEXIS 63596
   (W.D. Wash. May 14, 2015)..................................................................11

*Rhodes v. Olson Assocs., P.C.*,
   308 F.R.D. 664 (D. Colo. 2015) ..........................................................2, 4

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ...............................................................6

*Swinton v. SquareTrade, Inc.*,
   No. 4:18-CV-00144-SMR-SBJ, 2019 U.S. Dist. LEXIS 25458
   (S.D. Iowa Feb. 14, 2019).....................................................................10

*Tennille v. W. Union Co.*,
   785 F.3d 422 (10th Cir. 2015) .....................................................8, 12, 13

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011)................................................................................5

4829-8778-0021.v3

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §1 ........................................................................................................................5

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................ *passim*
   Rule 23(a) .............................................................................................5, 6, 7
   Rule 23(a)(4) .............................................................................................6, 7
   Rule 23(b) ....................................................................................................7
   Rule 23(b)(3) ............................................................................................7, 8
   Rule 23(c)(2)(B) .........................................................................8, 9, 12, 13
   Rule 23(e) ...........................................................................................12, 13
   Rule 23(e)(1)(B) ..........................................................................................8

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation, Fourth*
   (Federal Judicial Center 2004)
   §21.311 .......................................................................................................12

4829-8778-0021.v3

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

Plaintiffs respectfully move this Court for entry of an order: (1) preliminarily approving the settlement agreement between Plaintiffs and 1-800 Contacts, Inc. ("1-800") (the "Proposed 1-800 Settlement"); (2) conditionally certifying a proposed 1-800 settlement class; (3) approving the manner and form of notice to the Settlement Classes covered by the Proposed 1-800 Settlement and the previous, preliminarily approved settlements with: (i) Arlington Contact Lens Service, Inc. and National Vision, Inc. (collectively, "AC Lens/NVI"); (ii) Vision Direct, Inc., Walgreens Boots Alliance, Inc., and Walgreen Co. (collectively, "WAG/VD"); and (iii) Luxottica Retail North America, Inc. ("Luxottica") (ECF Nos. 150, 248, 273); and (4) approving Plaintiffs' proposed Plan of Distribution for the monies recovered through those settlements.  This motion is based on the following argument and points and authorities, the Declaration of Steven M. Jodlowski, the Declaration of Julie N. Green, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

## PRELIMINARY STATEMENT

After several years of litigation, Plaintiffs have reached an agreement to resolve their claims against 1-800, the last remaining Defendant.  The agreement, which provides for a $15.1 million cash payment, makes the total recovery for the Settlement Classes $40 million.  Jodlowski Decl., Ex. A, ¶1.33.  Because the amount is fair, adequate and reasonable, Plaintiffs seek preliminary approval of the Proposed 1-800 Settlement.

If the Proposed 1-800 Settlement is preliminarily approved, then Plaintiffs will have preliminarily approved settlements with all Defendants in this litigation.  That would allow Plaintiffs to consolidate into a single program the notice and administration processes for the Proposed 1-800

Settlement and the previously approved settlements with AC Lens/NVI, Luxottica and WAG/VD, resulting in significant cost savings for the Settlement Classes. To that end, Plaintiffs seek approval of a single notice program to inform class members of all four settlements, and a plan to distribute the $40 million settlement fund.[1] As detailed below, Plaintiffs' proposed notice program is designed to provide the best practicable notice and clearly and concisely explains the terms of the proposed Settlements, Settlement Class members' options and deadlines for exercising them. Plaintiffs' Plan of Distribution is based on a factual record amassed through discovery, and has been crafted to treat members of the Settlement Classes fairly and distribute the funds efficiently.

## I.     THE PROPOSED 1-800 SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

At this stage, the Court must make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate."); *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015). Preliminary approval is appropriate "where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'"[2] *In re Motor Fuel Temp. Sales Practices Litig.*, No. 07-MD-1840-KHV, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011).

---

[1]    Plaintiffs previously filed a motion seeking approval of a notice program and plan of distribution for the three previous settlements, but withdrew it and filed the instant motion after reaching a settlement with 1-800. *See* ECF Nos. 312, 316, 317.

[2]    Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

The 1-800 agreement is consistent with, and modeled after, the preliminarily approved WAG/VD, AC Lens/NVI and Luxottica agreements.   The 1-800 agreement provides for $15.1 million in monetary relief.  Jodlowski Decl.,[3] Ex. A, ¶1.33.  Within 15 days of the Court's entry of the preliminary approval order, $3,100,000 of the settlement monies will be paid into an Escrow Account and the remaining $12,000,000 will be deposited within 10 business days after final approval.  *Id.*, ¶3.1.  Any interest earned on the settlement fund will become part of the settlement. *Id.*, ¶1.36.  The settlement funds are non-reversionary.  *Id.*, ¶¶8.9, 10.5.

The agreement is made on behalf of the following purchasers:

[A]ll persons in the United States who do not timely exclude himself, herself, or themselves and who made at least one online purchase of contact lenses from 1-800 from January 1, 2004 to September 12, 2019 or any of the following entities during the specified time period: (i) Vision Direct, Inc. ("Vision Direct"), Walgreens Boots Alliance, Inc., Walgreen Co. ("Walgreens," collectively with Vision Direct referred to as "WAG/VD") from January 1, 2004 to September 12, 2019; (ii) Arlington Contact Lens Service, Inc. or National Vision Inc. (collectively, "AC Lens/NVI") from March 10, 2010 to September 19, 2017; or (iii) Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.) ("Luxottica") from December 23, 2013 to July 5, 2019. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged Agreement Counterparties, governmental entities and instrumentalities of government, states and their subdivisions, agencies and instrumentalities.

*Id.*, ¶1.34.

As in the three previous settlement agreements, Plaintiffs and members of the Settlement Class that do not exclude themselves will give up their rights to sue 1-800 for claims "arising from or relating . . . to . . . the predicate of the Action."  *Id.*, ¶¶1.30-1.33, 7.1-7.4.

---

[3]   Declaration of Steven M. Jodlowski in Support of Plaintiffs' Motion for Order Preliminarily Approving Settlement with Remaining Defendant 1-800 Contacts, Inc., Conditionally Certifying Settlement Class, Approving Notice Program and Preliminarily Approving Plan of Distribution ("Jodlowski Decl."), filed concurrently.

The Proposed 1-800 Settlement is the product of multiple rounds of intense negotiations among experienced counsel.  In fact, the parties twice previously attempted, but failed, to resolve the action before ultimately finding success on the third round of negotiations.  As a result of these negotiations, Co-Lead Class Counsel achieved a sizeable monetary recovery.  This negotiation history points in favor of finding that "the settlement negotiations in the instant case were fair, honest, and conducted at arm's length."  *Rhodes*, 308 F.R.D. at 667; *see also Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 WL 4523806, at *2 (D. Kan. July 27, 2015).  The Proposed 1-800 Settlement was also informed by years of litigation, which fully informed Plaintiffs regarding the strengths and risks associated with their claims, including at class certification, trial, and through any potential appeal.  The Proposed 1-800 Settlement eliminates the continuing expense and uncertainty of litigation against 1-800 in favor of immediate, substantial compensation for the settlement class.

Co-Lead Class Counsel has conducted a thorough investigation, and has expended substantial time and money, analyzing Plaintiffs' claims and damages, reviewing extensive document productions, and conducting and defending depositions.  Co-Lead Class Counsel has also retained economists and other experts and conducted a considerable amount of work in connection with Plaintiffs' class certification motion, which has been substantially briefed.  This work informed Co-Lead Class Counsel's views on the anticompetitive nature and impact of the bidding agreements, as well as 1-800's potential liability and exposure and Plaintiffs' potential risks in continuing to litigate this matter.  Based on the judgment of Co-Lead Class Counsel, Plaintiffs recommend this settlement, which provides a sizeable monetary benefit to the Settlement Class.  *See Rhodes*, 308 F.R.D. at 667

("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement.").

## II.     THE PROPOSED 1-800 SETTLEMENT CLASS SHOULD BE CERTIFIED

The Proposed 1-800 Settlement involves the same claims, on behalf of a class defined in substantially the same way, and arising out of the same facts, as in the settlements previously approved.  Like the earlier settlement classes, the Settlement Class contained in the Proposed 1-800 Settlement meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.

### A.     The Requirements of Rule 23(a) Are Satisfied

#### 1.     Numerosity

The 1-800 Settlement Class consists of at least several million consumers geographically dispersed across the United States; therefore, numerosity is readily satisfied.  Jodlowski Decl., ¶5; *see In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 446 (D. Kan. 2006) ("*Urethane I*") (certifying class consisting of "hundreds, if not thousands, of geographically dispersed businesses").

#### 2.     Commonality

Even though commonality only requires "'a single [common] question,'" numerous common issues of fact and law that affect all or a substantial number of Settlement Class Members on liability, impact and damages exist here.  *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011).  The nature of antitrust claims brought under §1 of the Sherman Antitrust Act has led courts to routinely find that commonality exists.  15 U.S.C. §1; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (predominance is "a test readily met in certain cases alleging . . . violations of the antitrust laws"); *Urethane I*, 237 F.R.D. at 446-47 (collecting cases); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254 (10th Cir. 2014) ("*Urethane II*") (collecting cases).

4829-8778-0021.v3

### 3.      Typicality

As the Supreme Court has observed, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Provided the claims of Named Plaintiffs and putative class members are based on the same legal or remedial theory, differing fact situations of the putative class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).   "[L]ike commonality, typicality exists where . . . all [putative] class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Id.* at 1199.

Plaintiffs' claims arise from the same course of conduct: Defendants' agreements not to compete in certain online advertising.  ECF No. 72, Amended Complaint, ¶2.  The claims of the 1-800 Settlement Class are all based on the same legal or remedial theory, which is that they suffered damages by virtue of having purchased contact lenses online at prices artificially inflated due to the advertising agreements.  By virtue of the antitrust allegations in this action, "[P]laintiffs' claims are typical of those of the [Settlement] class because the claims all depend on proof of the antitrust violation by the defendants, not on the [P]laintiffs' individual positions." *Urethane I*, 237 F.R.D. at 447.

### 4.      Adequacy

Adequacy is satisfied under Rule 23(a)(4) if the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Only "fundamental" conflicts that "go to the specific issues in controversy" prevent certification. *Ogden v. Figgins*, 315 F.R.D. 670, 675 (D. Kan. 2016).  Plaintiffs satisfy the

adequacy requirement of Rule 23(a)(4) here because: (i) there are no conflicts of interest between Plaintiffs and the 1-800 Settlement Class as a whole; and (ii) the attorneys prosecuting this case are exceptionally qualified to litigate this matter.  Plaintiffs are all adequate representatives of the 1-800 Settlement Class and should be appointed as class representatives for settlement purposes.  Plaintiffs and members of the class share the same interest in maximizing their recovery, as they all purchased contact lenses during the applicable period at artificially inflated prices.  Jodlowski Decl., ¶5.  Thus, Plaintiffs' interest in proving liability and damages is entirely aligned with that of the 1-800 Settlement Class.  Indeed, Co-Lead Class Counsel have now obtained $40 million on behalf of class members.

## B.     The Requirements of Rule 23(b) Are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623. "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive."  *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Here, proof of the existence of the unlawful agreements, and their terms and participants, will consist of class-wide, common evidence that will necessarily focus on Defendants' conduct, and not the conduct of individual class members.  In addition, predominance is demonstrated, as in this case,

- 7 -

where the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis. *Urethane II*, 768 F.3d at 1254-56. The heart of Plaintiffs' allegations is that defendants violated the antitrust laws, and "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593, at *35-*36 (D. Colo. Aug. 28, 2013) ("While predominance may be difficult to demonstrate in mass tort cases in which the 'individual stakes are high and disparities among class members great,' it is a 'test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.'"). Finally, as numerous courts have held, a class action is a superior method of adjudicating claims in cases like this one. *Urethane I*, 237 F.R.D. at 453. Courts routinely certify classes in antitrust cases. *Id*. at 446-47 (collecting cases).

## III.   THE PROPOSED MANNER AND FORMS OF NOTICE SHOULD BE APPROVED

Rule 23 provides "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1)(B). Where a settlement class has been certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must clearly state: (1) the nature of the action; (2) the class definition; (3) the claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who so requests; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment. *Id*. "'[T]he form that such notice is to take is left to the discretion of the district court.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

A.      **The Proposed Manner of Notice Should Be Approved**

Plaintiffs propose a direct notice program via e-mail, as well as a robust, multi-faceted media campaign to provide indirect notice through online publication and the establishment of a dedicated settlement website.  The details of the notice plan are summarized below.

**<u>Direct E-Mail Notice</u>**:  The Short-Form Notice will be distributed via e-mail to potential members of the Settlement Classes who are identified in Defendants' transactional records. Defendants have provided (or have indicated that they have and will produce) records reflecting purchases by members of the Settlement Classes, including names and addresses (street and e-mail), to the extent such information is reasonably available.  Jodlowski Decl., ¶3.

Because e-mail addresses are available for virtually all class members, Plaintiffs propose that direct, individual notice be provided via e-mail.  Under Rule 23, "[t]he notice may be by one or more of the following: United States mail, *electronic means*, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B) (effective Dec. 1, 2018).  E-mail notice is ideal here given the nature of the Settlement Classes, which consists of online purchasers of contact lenses.  When purchasing contact lenses online, class members were required to enter their e-mail address, which was then recorded by Defendants and used as the primary method to communicate about the purchases covered by this action and to advertise Defendants' products.  Online purchasers are heavy and frequent users of e-mail.  *Cf. Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1263 (S.D. Fla. 2016) ("e-mail notice . . . is particularly appropriate in this case because . . . primary method of communication . . . was through email"); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (the principal method of delivery was through e-mail because contact with the class members was primarily through electronic means);

*In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018) (approving e-mail notice where class was comprised of airline ticket purchasers who purchased tickets online).

E-mail is not only the most effective form of notice here, it is also by far the most efficient and cost-effective way to provide reasonable notice. Indeed, using e-mail notice is estimated to be at least ten times *less* expensive than providing notice by U.S. mail, resulting in millions of dollars in savings for the Settlement Classes. Green Decl.,[4] ¶14. It would be extremely wasteful to spend a significant portion of the Settlement Fund sending direct mail notice to approximately 10 million class members across the United States, when fair and reasonable notice can be provided by a significantly less expensive means.

Numerous courts have authorized e-mail notice as the primary notice method in similar circumstances. Jodlowski Decl., Ex. B, ¶¶18-24 (*In re Yahoo! Inc. Customer Data Breach Sec. Litig.*, No. 16-md-02752-LHK, Order Granting Mot. for Prelim. Approval (N.D. Cal. July 20, 2019)); *id.*, Ex. C at 23-24 (*Yahoo!*, Mem. of P& A in Support of Pltfs' Mot. for Prelim. Approval of Class Action Settlement (Oct. 22, 2018)); *In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 7841, at *156-*57 (N.D. Ga. Jan. 13, 2020) (approving notice program consisting of e-mail, a digital and social media campaign and an ad in USA Today, and a dedicated settlement website); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *3 (N.D. Cal. Dec. 19, 2016) (approving notice consisting of e-mail, settlement website, toll-free number, publication notice, press release, text link advertising, banner advertising, and advertising on Facebook and Twitter); *Swinton v. SquareTrade, Inc*., No. 4:18-CV-

---

[4]    Declaration of Julie N. Green on Behalf of CPT Group, Inc. in Support of Motion for Order Approving Notice to the Settlement Classes and Proposed Plan of Distribution ("Green Decl."), filed concurrently.

00144-SMR-SBJ, 2019 U.S. Dist. LEXIS 25458, at *41-*42 (S.D. Iowa Feb. 14, 2019) (approving a notice plan where the administrator would establish a website, run ads on google, and e-mail notice three times to each class member); *In re Airline Travel Antitrust Litig.*, 322 F. Supp. 3d at 72 (approving e-mail notice to online purchaser class members due to "disproportionately higher cost of providing notification by direct mail as opposed to e-mail" and fact that direct e-mail notice was supplemented by publication and a dedicated website).[5]

**Publication/Internet Notice**:  Indirect notice will also be provided online via a targeted, multi-layered plan that combines the use of various digital media to reach members of the Settlement Classes.  Specifically, the Settlement Administrator shall place online display banner advertising (*see* Ex. 3) on search engines such as Google and Bing, and ad exchanges, and utilize social media networks such as Facebook, Instagram and YouTube, to direct traffic to the settlement website. Based on its research, CPT Group estimates that this supplemental media campaign alone will result in 44 million impressions and reach 7.5 million class members.  A press release will also be issued.

**Settlement Website and Phone Contact Information**:  Plaintiffs will also establish a website dedicated to the Settlements at www.onlinecontactlenssettlement.com.  This will enable any potential member of a Settlement Class to easily access information about the proposed Settlements, including the notice and claims process, and to file claims.  All documents related to the notice and claims process, along with the agreements and key case materials such as the Amended Complaint, will also be posted on the website.  The Settlement Administrator will also establish a live call center that will operate during business hours, a dedicated 24-hour, toll-free support line with interactive

---

[5]    Even prior to the change in Rule 23 expressly authorizing electronic notice, e-mail notice in similar circumstances has been found appropriate.  *See, e.g., Rajagopalan v. Meracord, LLC*, No. 12-CV-05657-BHS, 2015 U.S. Dist. LEXIS 63596, at *5-*6 (W.D. Wash. May 14, 2015) (e-mail notice "most efficient and cost effective notice under the circumstances," where e-mail addresses were found in defendant's customer database).

4829-8778-0021.v3

voice response capabilities, and an e-mail address to provide information about the Settlements and answer class member questions.

Courts regularly approve notice programs that combine individualized notice and publication notice. *See, e.g.*, *Equifax*, 2020 U.S. Dist. LEXIS 7841, at *156-*57; *Optical Disk*, 2016 WL 7364803, at *3. Plaintiffs therefore respectfully submit the proposed notice plan summarized above satisfies the requirements of Rule 23(e) and 23(c)(2)(B) and should thus be approved by the Court.

**B.      The Proposed Forms of Notice Should Be Approved**

There are no rigid rules to determine whether class settlement notice satisfies constitutional or Rule 23(e) requirements. In order to satisfy due process, notice must fairly apprise prospective members of the class of the terms of the proposed Settlements so that class members may come to their own conclusions about whether the Settlements serve their interests and whether they want to opt out of the proposed class. *W. Union*, 785 F.3d at 437 (citing *Gooch v. Life Inv'rs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012)). Ultimately, the notice must "enable class members to make an informed decision about their participation." *Manual for Complex Litigation, Fourth* §21.311 (Federal Judicial Center 2004).

The Short-Form Notice (Ex. 1) communicates to potential members of the Settlement Classes, in clear and concise language, the information required to make an informed decision. This includes information about Defendants' alleged misconduct, the scope of the Settlement Classes, the amount of the Settlements, the right to opt out or object to the Settlements, and the date and location of the Fairness Hearing to be set by the Court. The Short-Form Notice, which will be provided to class members through e-mail, also directs members of the Settlement Classes to the designated settlement website referenced above, where the Long-Form Notice (Ex. 2), the Claim Form (Ex. 4),

- 12 -

and other settlement-related documents are available, and provides contact information for the Settlement Administrator and Co-Lead Class Counsel.

The Long-Form Notice (Ex. 2) provides comprehensive language about the Settlements. It describes: (i) the nature of the lawsuit; (ii) the claims involved and the parties' positions; (iii) what it means for a settlement to have been reached; (iv) a summary of the terms of the Settlements, including the monetary relief, scope of the releases and cooperation obligations; (v) the definitions of the Settlement Classes; (vi) a description of the Plan of Distribution and where on the settlement website to find more detailed information about Settlement Fund allocation; (vii) the procedures and deadlines for submitting a claim in order to receive a payment from the Settlement Fund; (viii) the deadlines and procedures for requesting exclusion from the Settlement Classes, objecting to the Settlements, and attending the Fairness Hearing; (ix) that members of a Settlement Class may, but need not, appear through their own counsel at the Fairness Hearing; (x) the binding effect of participating in the Settlements; (xi) the identity of Co-Lead Class Counsel; and (xii) Co-Lead Class Counsel's intention to move for an award of fees, expenses, and service awards. The language in the Long-Form Notice and Claim Form is designed to be readily understood by members of the Settlement Classes.

As the Tenth Circuit has found, such detail is sufficient to fairly apprise settlement class members of their rights with respect to the settlements and thus meet the requirements of Rule 23(e) and 23(c)(2)(B). *W. Union*, 785 F.3d at 437 (upholding district court's approval of settlement notice generally informing class members of their opt-out rights, the nature of the claims at issue and the ways in which class members could obtain more information about the settlement).

4829-8778-0021.v3

**IV.    THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED**

Under Rule 23, class action settlements must be fair, reasonable, and adequate.  The plan of distribution must also, to obtain final approval, satisfy this standard.  A plan of distribution supported by competent and qualified counsel is reviewed to determine whether it has a "reasonable, rational basis." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006).  A principal goal of the plan of distribution is equitable and timely distribution without burdening the process in a way that will unduly waste the fund. *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803, at *19 (D. Kan. Oct. 26, 2012).  Similar to the requirements for notice, whether a distribution plan is fair and reasonable is within the discretion of the district court. *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 U.S. Dist. LEXIS 99839, at *72 (D. Kan. July 29, 2016).

Plaintiffs contend that all class members were overcharged when they purchased contact lenses from 1-800 or from the other Defendants, which entered into bilateral agreements with 1-800 to restrict certain online advertising relating to the sale of contact lenses.  ECF No. 72, ¶¶2-13.  Discovery has shown that, in terms of gross dollar sales, nearly 74% of the Settlement Classes are comprised of purchases from 1-800.  Purchases from WAG/VD comprise 20% of the Settlement Classes, and purchases from AC Lens/NVI and Luxottica comprise the remaining 6%.

The Plan of Distribution (Ex. 5) thus allocates the majority of the Net Settlement Fund to purchasers from 1-800: 74% of the Net Settlement Fund will be allocated to compensate class members for overcharges on qualifying purchases from 1-800; 20% will be allocated to class members with qualifying WAG/VD purchases; 4% will be allocated to class members with

qualifying AC Lens/NVI purchases; 2% will be allocated to class members with qualifying Luxottica purchases.

The Plan of Distribution allows class members to make a claim against the Net Settlement Fund based on the total number of qualifying purchases (*i.e.*, a contact lens purchase made online from 1-800, WAG/VD, Luxottica or AC Lens/NVI during the applicable Settlement Class Period) and the price paid for each contact lens purchase.  To determine each Settlement Class member's distribution, the administrator will total the price of all qualifying purchases from each Defendant, and each class member will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's total purchases from that Defendant (the "claim") bears to the total purchases ("total claims") of all the Authorized Claimants from that Defendant.  The administrator will then total the class member's *pro rata* share of the Net Settlement Fund allocated to each Authorized Claimant for each Defendant to get the class member's total distribution.

Distributions will be made through electronic means selected by the claimant: either ACH, Venmo or PayPal.  Although the claims process will be structured to encourage class members to receive their distribution through electronic means to help minimize administrative costs, the Settlement Administrator will provide Authorized Claimants with their distribution by check sent via U.S. mail, if class members so request.

Plaintiffs respectfully submit that the Plan of Distribution is well within the range of possible approval, and thus should be preliminarily approved by the Court.

## V.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Finally, Plaintiffs respectfully propose the following schedule for remaining events and submissions related to the Settlements:

| EVENT | DATE |
|-------|------|
| Commence Notice and Launch Settlement Website ("Notice Date") | 35 days after Order granting motion |
| File Papers in Support of Final Approval and Fee and Expense Applications | 45 days after Notice Date |
| Last Day to Mail Request for Exclusion/Opt Out of Class; Last Day to Object to Settlements | 75 days after Notice Date |
| File Reply Papers in Support of Final Approval and Fee and Expense Application | 7 days after objection deadline |
| Fairness Hearing | 14 days after reply briefs filed |
| Deadline to Submit Claim Forms | 45 days after Fairness Hearing |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an Order preliminarily approving settlement with 1-800, conditionally certifying the settlement class, approving the notice program and preliminarily approving the Plan of Distribution.

Respectfully submitted,

DATED:  May 15, 2020

ROBBINS GELLER RUDMAN
   & DOWD LLP
DAVID W. MITCHELL (Admitted *Pro Hac Vice*)
BRIAN O. O'MARA (Admitted *Pro Hac Vice*)
STEVEN M. JODLOWSKI (Admitted *Pro Hac Vice*)
ASHLEY M. KELLY (Admitted *Pro Hac Vice*)


                            s/ David W. Mitchell
                        ─────────────────────────
                        DAVID W. MITCHELL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

4829-8778-0021.v3

DATED:  May 15, 2020                     BOIES SCHILLER FLEXNER LLP
                                         CARL GOLDFARB (Admitted *Pro Hac Vice*)


                                         _____s/ Carl Goldfarb_____
                                         CARL GOLDFARB

                                         401 East Las Olas Blvd., Suite 1200
                                         Fort Lauderdale, FL  33301
                                         Telephone:  954/356-0011
                                         954/356-0022 (fax)

                                         BOIES SCHILLER FLEXNER LLP
                                         SCOTT E. GANT (Admitted *Pro Hac Vice*)
                                         MELISSA F. ZAPPALA (Admitted *Pro Hac Vice*)
                                         1401 New York Ave., NW
                                         Washington, DC  20005
                                         Telephone:  202/237-2727
                                         202/237-6131 (fax)

                                         Counsel for Plaintiffs and
                                         Interim Lead Counsel for the Putative Class

                                         ANDERSON & KARRENBERG
                                         HEATHER M. SNEDDON
                                         JARED SCOTT
                                         50 West Broadway, Suite 700
                                         Salt Lake City, UT  84101
                                         Telephone:  801/534-1700
                                         801/364-7697 (fax)

                                         Counsel for Plaintiffs

- 17 -

### INDEX OF EXHIBITS

Exhibit 1:     Short-Form Notice: Legal Notice

Exhibit 2:     Long-Form Notice: Notice of Online Contact Lens Antitrust Settlements

Exhibit 3:     Publication Notice: Banner Ad

Exhibit 4:     Claim Form

Exhibit 5:     Proposed Plan of Distribution