ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT 84101
Telephone: 801/534-1700
801/364-7697 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID W. MITCHELL
BRIAN O. O'MARA
STEVEN M. JODLOWSKI
ASHLEY M. KELLY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT
1401 New York Ave., NW
Washington, DC 20005
Telephone: 202/237-2727
202/237-6131 (fax)
 – and –
CARL GOLDFARB
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: 954/356-0011
954/356-0022 (fax)

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| J THOMPSON, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:16-cv-01183 |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | |
| | ) | Honorable Judge Tena Campbell |
| vs. | ) ) | Honorable Magistrate Judge Dustin B. Pead |
| 1-800 CONTACTS, INC., et al., | ) ) | PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| Defendants. | ) ) ) ) | SETTLEMENTS, APPROVAL OF THE PLAN OF DISTRIBUTION, AND FINAL CERTIFICATION OF THE SETTLEMENT CLASSES |

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED AND GROUNDS FOR RELIEF ............................................................1

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     FACTUAL BACKGROUND.........................................................................................4

        A.      History of the Litigation.....................................................................................4

        B.      Summary of the Proposed Settlements and Notice.................................................7

                1.      Monetary Payments .........................................................................8

                2.      Cooperation....................................................................................8

                3.      Release of Claims ...........................................................................9

III.    THE PROPOSED SETTLEMENTS ARE FAIR AND REASONABLE AND
        MORE THAN SATISFY THE CRITERIA FOR FINAL APPROVAL...........................9

        A.      Legal Standards for Final Approval of a Class Action Settlement.........................9

        B.      The Settlements Are Fair, Reasonable and Adequate...........................................11

                1.      The Settlements Were Fairly and Honestly Negotiated............................11

                2.      The Outcome of the Litigation Was Uncertain Because Serious
                        Questions of Law and Fact Existed ...................................................13

                3.      Immediate Settlement Is More Beneficial to the Class than the
                        Possibility of Recovery in the Future.................................................16

                4.      Lead Plaintiffs and Their Counsel Believe that the Settlements Are
                        Fair and Reasonable.......................................................................17

IV.     THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE ...............................18

V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES
        OF EFFECTUATING THE SETTLEMENT ...............................................................20

VI.     NOTICE TO THE CLASSES COMPLIED WITH DUE PROCESS ..............................20

VII.    CONCLUSION.........................................................................................................22

4826-1939-9880.v1

## TABLE OF AUTHORITIES

Page

**CASES**

*Acevedo v. Southwest Airlines Co.*,
No. 1:16-CV-00024-MV-LF, 2019 WL 6712298
(D.N.M. Dec. 10, 2019)
*report and recommendation adopted*,
2020 WL 85132 (D.N.M. Jan. 7, 2020) ...........................................................................12, 16

*Belote v. Rivet Software, Inc.*,
No. 12-cv-02792-WYD-MJW, 2014 WL 3906205
(D. Colo. Aug. 11, 2014) ....................................................................................................9

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)...............................................................................................................10

*Childs v. Unified Life Ins. Co.*,
No. 10-CV-23-PJC, 2011 WL 6016486
(N.D. Okla. Dec. 2, 2011)...........................................................................................9, 12, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)............................................................................................................21

*Fager v. CenturyLink Commc'ns, LLC*,
854 F.3d 1167 (10th Cir. 2016) ..........................................................................................10

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993),
*abrogated on other grounds by,*
*Devlin v. Scardelletti*, 536 U.S. 1 (2002)......................................................................10, 21

*Grady v. De Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) .............................................................................................9

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000),
*aff'd*, 264 F.3d 201 (3d Cir. 2001) ......................................................................................18

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................13

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...............................................................................18, 19, 22

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................................21

4826-1939-9880.v1

**Page**

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    912 F. Supp. 2d 1178 (D.N.M. 2012) ............................................................9, 14, 15

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003),
    *aff'd, Wal-Mart Stores*, 396 F.3d ...........................................................13

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ..................................................... *passim*

*Lane v. Page*,
    862 F. Supp. 2d 1182 (D.N.M. 2012) ...........................................................15, 16

*Law v. Nat'l Collegiate Athletic Ass'n*,
    108 F. Supp. 2d 1193 (D. Kan. 2000),
    *aff'd*, 246 F.3d 681 (10th Cir. 2001)...........................................................18, 19

*Lopez v. City of Santa Fe*,
    206 F.R.D. 285 (D.N.M. 2002)..................................................................17

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .................................................. *passim*

*Marcus v. State of Kan. Dept. of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002)..........................................................17

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. CIV-07-933-M, 2008 WL 4816510
    (W.D. Okla. Oct. 27, 2008)...........................................................11, 12, 14

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)...........................................................11

*Newton v. Fortis Ins. Co.*,
    No. 04-cv-1650-PSF-OES, 2006 U.S. Dist. LEXIS 33965
    (D. Colo. May 26, 2006)...........................................................19

*O'Dowd v. Anthem, Inc.*,
    No. 14-CV-02787-KLM-NYW, 2019 WL 4279123
    (D. Colo. Sept. 9, 2019)...........................................................14, 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ...........................................................10

- iii -

Page

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
    749 F.2d 1451 (10th Cir. 1984) ...................................................................9

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir.),
    *cert. denied sub nom.*, *Leonardo's Pizza by the Slice,*
    *Inc. v. Wal–Mart Stores, Inc.*,
    544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005)............................................11, 13

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) .................................................................13

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ..................................................................10, 16

*Williams Foods, Inc. v. Eastman Chem. Co.*,
    No. 99C16680, 2001 WL 1298887
    (Kan. Dist. Ct. Aug. 8, 2001)...................................................................9

*Williams v. First Nat'l Bank of Pauls Valley*,
    216 U.S. 582 (1910)...............................................................................10

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4 ............................................................................................22

Federal Rule of Civil Procedure
    Rule 23 ........................................................................................3, 22
    Rule 23(a).....................................................................................20, 22
    Rule 23(b)(3)..................................................................................20, 22
    Rule 23(c)(2)(B)...........................................................................20, 21, 22
    Rule 23(e)..................................................................................1, 10, 21

4826-1939-9880.v1

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

Plaintiffs Iysha Abed, Daniel J. Bartolucci, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, J Thompson, and Edward Ungvarsky (collectively, "Plaintiffs"), on behalf of themselves and the four Settlement Classes, respectfully submit this memorandum of points and authorities in support of their motion for: (i) final approval of the proposed settlements of this class action ("Settlements"); (ii) approval of the proposed plan for allocating the net settlement proceeds to the Class ("Plan of Distribution"); and (iii) final certification for purposes of effectuating the Settlements of the four Settlement Classes that were preliminarily certified by the Court's Orders. ECF Nos. 150, 248, 273, 325.[1]  This motion should be granted because the Settlements and the proposed Plan of Distribution are fair, reasonable and adequate and satisfy the requirements for final approval set forth by Federal Rule of Civil Procedure 23(e).

## I.    PRELIMINARY STATEMENT

Plaintiffs, through Co-Lead Class Counsel,[2] have obtained, through four separate Settlements, a total of $40 million in cash for the benefit of the four settlement Classes, in exchange for the dismissal of all claims brought in this litigation and a full release of claims against

---

[1]    All capitalized terms that are not defined herein have the same meanings ascribed to them in the Settlement Agreements between Plaintiffs and Defendants (ECF Nos. 139-2, 245-2, 263-2, 321-7, Ex. A) and the Joint Declaration of David W. Mitchell and Carl Goldfarb in Support of Plaintiffs' Motion for Final Approval of Settlement Agreements and Co-Lead Class Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Service Awards to Class Representatives ("Joint Declaration" or "Joint Decl."), filed concurrently.  Unless otherwise noted, all citations are omitted and emphasis is added.

[2]    The Court appointed Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP as Interim Co-Lead Class Counsel on May 10, 2017.  ECF No. 70.  In granting preliminary approval to the four Settlements, the Court preliminary appointed interim co-lead class counsel as Class Counsel or Co-Lead Class Counsel for each Settlement Class.  ECF Nos. 150 at 3, 248 at 3, 273 at 4, 325 at 6.

Defendants[3] and the other Released Parties.  The Settlements are a favorable result for the Classes, providing a significant and certain recovery in an action where it was far from certain there would be any recovery.

In addition to providing meaningful monetary recovery for the Classes, the Settlements avoid the significant risks and expense of continued litigation.  As discussed herein and in the accompanying Joint Declaration, Defendants advanced substantial arguments in opposition to the Classes' claims.  For example, Defendants maintained throughout the litigation that Plaintiffs would be unsuccessful in proving that the advertising suppression agreements at issue were anticompetitive, and in particular, Defendants vigorously disputed Plaintiffs' contention that the agreements inflated the prices that class members paid for contact lenses beyond what they would have paid in a competitive market.  Defendants submitted three expert reports in opposition to Plaintiffs' motion for class certification, and contended Plaintiffs could not demonstrate that Defendants' conduct had an impact on all or most class members, a prerequisite for certifying an antitrust claim.  And even assuming that Plaintiffs were able to establish that the agreements had an adverse impact on class members, if the Court applied a full Rule of Reason analysis, Plaintiffs would also have had to overcome Defendants' argument that the agreements protected Defendants' legitimate trademark interests and that their procompetitive purpose outweighed any anticompetitive impact.

While Co-Lead Class Counsel believe that the claims asserted against Defendants are meritorious and that they would have been able to overcome the foregoing challenges (and others), there was no guarantee that Plaintiffs would have obtained class certification, defeated a motion for

---

[3]     Defendants are 1-800 Contacts, Inc.; Arlington Contact Lens Service, Inc. ("AC Lens"), National Vision, Inc. ("NV"), Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.) ("Luxottica"), Vision Direct, Inc. ("Vision Direct"), Walgreen Co., and Walgreens Boots Alliance, Inc. (collectively, "Walgreens").

summary judgment or succeeded at trial. Doing so would have required considerable additional time and millions of dollars in further expenses for class certification rebuttal experts, merits experts, and dozens of additional fact and expert depositions, among other things, before even getting to trial. And, even if Plaintiffs ultimately prevailed, obtaining a recovery for the Classes that exceeded the present settlement amount was far from certain and could have taken many years to achieve.

Co-Lead Class Counsel, two firms with extensive experience prosecuting antitrust class actions and other complex litigation, believe that the Settlements are a favorable result and in the best interests of the Settlement Classes. Before reaching the Settlements, Co-Lead Class Counsel had an appreciation of the strengths and weaknesses of the case based on, among other things: their pre-complaint investigation; the motion to dismiss briefing; their review of the FTC record; their review of the discovery in this case, including documents, transactional data, and depositions; their work with consultants and experts; and the briefing and dueling expert reports on Plaintiffs' motion for class certification.

In light of the considerations discussed below, Plaintiffs and their counsel firmly believe that the $40 million recovery is eminently fair, reasonable, and adequate, and provides a favorable result for the Settlement Classes. As explained in the motions for preliminary approval, and demonstrated again below, the four Settlement Classes easily satisfy the standards of Rule 23. The Plan of Distribution is also fair and reasonable, and allocates compensation on a *pro rata* basis according to the dollar value of the purchase from each of the Defendants. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlements, approve the Plan of Distribution as a fair and reasonable method for distributing the Net Settlement Fund to the Classes, and grant final certification of the four settlement Classes for purposes of effectuating the Settlements.

In accordance with the Court's June 3, 2020 Order (ECF No. 325), Plaintiffs provided potential class members with notice of the Settlements and information about the Settlements through a robust notice plan. The Claims Administrator, CPT Group ("CPT"), sent the Short Form Notice to 10,299,026 e-mail addresses for potential class members identified in the data files provided by Defendants.[4] Additionally, the Settlements were publicized through an extensive social media campaign and a press release transmitted over the *PR Newswire* on July 8, 2020. Sarich Decl., ¶20 & Ex. D. CPT has also maintained a website dedicated to the settlements since June 29, 2020 and extensively publicized the address of that site, which contains comprehensive information about the Settlements and how to submit a claim. Sarich Decl., ¶¶16-18. As ordered by the Court and stated in the Notice, the deadline for submitting requests for exclusion from the Classes and objecting to the Settlements, the Plan of Distribution, and/or the request for attorneys' fees and expenses is September 21, 2020. To date, only three requests for exclusion have been received by CPT. Sarich Decl., ¶24.

## II.     FACTUAL BACKGROUND

### A.     History of the Litigation

The claims in this litigation arise from bilateral agreements that 1-800 Contacts reached with thirteen other online sellers of contact lenses whereby the parties to each of those agreements contracted not to compete against each other for certain search engine advertising. Plaintiffs allege that those agreements caused individuals who purchased contact lenses online from one or more of

---

[4]     *See* Declaration of Ani S. Sarich on Behalf of CPT Group, Inc. with Respect to Implementation and Adequacy of Settlement Class Notice Plan ("Sarich Decl."), ¶¶5-6, 11-15, filed concurrently.

the Defendants to pay more for those lenses during the relevant Class Periods than they would have paid in a competitive marketplace.  Joint Decl., ¶9.

The initial complaint to reach this Court was filed in October 2016.  ECF No. 1.  Eventually seven other complaints were transferred to this Court and consolidated here.  On May 31, 2017, following the appointment on May 10, 2017 of Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP as Interim Co-Lead Counsel (ECF No. 70), Plaintiffs Abed, Bartolucci, Duncanson, Nance, Pinto, Schulson, Thompson, and Ungvarsky, filed the operative Consolidated Amended Complaint ("Consolidated Complaint").  ECF No. 72.[5]  The Consolidated Complaint named as Defendants 1-800 Contacts, Inc., AC Lens, NVI, Luxottica, Vision Direct, and Walgreens.

On August 4, 2017, Defendants filed two separate motions to dismiss (ECF Nos. 116-120), one raising several challenges to Plaintiffs' Sherman Antitrust Act claim, and the other contending that any conduct that predated the initial complaints by more than four years was time barred.  After extensive briefing, including a sur-reply and a supplemental reply brief, and oral argument, on May 17, 2018, this Court denied Defendants' motions in their entirety.  ECF No. 164.  While the motions to dismiss were still pending, Plaintiffs entered into a settlement agreement with AC Lens and NVI for $7 million.  ECF Nos. 102-103, 139, 150.

The parties proceeded with discovery, including extensive third-party discovery.  Plaintiffs served 28 subpoenas *duces tecum*; Defendants served 51 subpoenas *duces tecum*.  Both Plaintiffs and Defendants filed several motions to compel discovery.  ECF Nos. 195-196, 227, 229, 230, 235-238, 243, 246, 251-252, 258.

---

[5]     Alexa Bean was also one of the original named plaintiffs, but withdrew in December 2019, ECF No. 283.

As discovery progressed, Plaintiffs entered into a settlement agreement after negotiations with Luxottica for $5.9 million (ECF Nos. 244-245, 248), and subsequently entered into a separate settlement agreement with Vision Direct and Walgreens for $12 million.  ECF Nos. 259-260, 263, 273.

Plaintiffs took several depositions, including a Rule 30(b)(6) deposition of 1-800 Contacts and third-party depositions.  Numerous other depositions were scheduled but subsequently postponed because of the COVID-19 crisis.

On December 19, 2019, Plaintiffs filed their motion for class certification, accompanied by two expert reports, one by James McClave, Ph.D., and one by David Evans, Ph.D.  ECF Nos. 284-286.  Defendants subsequently deposed the class representatives Abed, Bartolucci, Duncanson, Nance, Pinto, Schulson, Thompson, and Ungvarsky, and also took the depositions of Dr. McClave and Dr. Evans.

Defendants filed their opposition to Plaintiffs' motion for class certification, along with three expert reports, on March 10, 2020.  ECF Nos. 295-297.

On April 10, 2020, because the growing COVID-19 crisis made it nearly impossible to travel, and exceedingly difficult to proceed with expert depositions and other pending deadlines, the parties filed a joint motion to vacate all existing deadlines (ECF No. 310), which the Court granted on April 13, 2020.  ECF No. 311.  Even with the deadlines vacated, Plaintiffs continued to advance their case, filing a motion on April 15, 2020, for approval of a notice plan and plan of allocation for the first three settlements that Plaintiffs had entered into (ECF No. 312), and on April 17, 2020, filing a motion to set aside part of Magistrate Judge Pead's earlier discovery order.  ECF No. 313.

4826-1939-9880.v1

At the same time, Plaintiffs and counsel for 1-800 Contacts continued settlement negotiations, and subsequently entered into a settlement agreement with 1-800 Contacts agreeing to pay $15.1 million, which was memorialized in a written agreement on May 8, 2020.  ECF No. 321-7, Ex. A.

The parties have been litigating this case for more than three years.  Joint Decl., ¶¶12-13.  It was only after thoroughly exploring the merits of the litigation and after four separate sets of negotiations with each of the different Defendants or Defendant groups, that Plaintiffs' Counsel reached a series agreements to settle the litigation for an aggregate amount of $40 million.  *Id.*, ¶¶14-89.[6]

### B.       Summary of the Proposed Settlements and Notice

The Settlements provide for a total payment of $40 million to the Settlement Classes.  ECF Nos. 139-2, 245-2, 263-2, 321-7, Ex. A.  All but the last of the Settling Defendants also provided valuable cooperation, in the form of transactional data, documents, and other discovery, to aid Plaintiffs' then-ongoing litigation against the non-settling defendants.

Plaintiffs sought, and the Court granted, preliminary approval of each of the four Settlements.  ECF Nos. 150, 248, 273, 325.  The Court also approved the plan of notice and preliminarily approved the Plan of Distribution.  ECF No. 325.  The deadline for objections or exclusions is September 21, 2020, and the fairness hearing is scheduled for October 20, 2020.

---

[6]       The accompanying Joint Declaration provides further detail regarding the efforts undertaken by Plaintiffs and their counsel on behalf of the Classes.  For the sake of brevity and to avoid repetition, Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed discussion of the procedural history of the litigation.  *Id.*, ¶¶9-105.  In addition to the Joint Declaration, Co-Lead Class Counsel are simultaneously submitting their Co-Lead Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and Service Awards to Class Representatives ("Fee Memorandum").  The Joint Declaration and Fee Memorandum are incorporated by reference in this memorandum.

With the exception of the monetary component, the terms of each Settlement Agreement are substantially identical, allowing for an omnibus motion for final approval of the four Settlements and a single notice to the Settlement Classes.

### 1.    Monetary Payments

The Settlement Amount being paid by each Defendant is set out below:

| | |
|---|---|
| 1-800 Contacts, Inc. | $ 15,100,000 |
| Walgreens/Vision Direct | $ 12,000,000 |
| AC Lens/National Vision | $  7,000,000 |
| Luxottica | $  5,900,000 |

The settlement funds are non-recapture, meaning that as of the Effective Date, Settling Defendants have no right to the return of the settlement fund or any portion thereof for any reason. ECF Nos. 139-2 at §10.3, 245-2 at §10.3, 263-2 at §10.5, 321-7 Ex. A at §10.5.

### 2.    Cooperation

The Settlement Agreements obligated the Settling Defendants (except for 1-800 Contacts, whose agreement ended the litigation) to provide discovery which assisted Plaintiffs in the prosecution of the action, including at least: (a) production of transaction data involving online contact lens sales during the Class Periods and assistance in understanding that data; (b) discovery concerning the Settling Defendants' trademarked terms; (c) production of financial information; and (d) cooperation in authenticating and establishing as business records documents or data produced in this litigation.  ECF Nos. 139-2, Exs. A & B; 245-2, Ex. A, 263-2, Ex. A.  Two of the settling Defendants also provided Declarations with valuable assistance.  ECF Nos. 139-2, Ex. B, 263-2 at Ex. A, ¶6.

### 3.    Release of Claims

The Settlement Agreements all provide that upon the Effective Date, the Action, all claims asserted in the Action, and all released claims that belong to Plaintiffs and releasing class members will be dismissed with prejudice as against each Settling Defendant.  They also provide that Plaintiffs and each of the Settlement Class Members will be permanently barred and enjoined from asserting any of the released claims against each Settling Defendant and released party in any action or proceeding.  Consistent with the law governing the release of class action claims, the releases cover only those claims "arising from or relating . . . to . . . the predicate of the Action."  ECF Nos. 139-2 at §1.27, 245-2 at §1.29, 263-2 at §1.31, 321-7, Ex. A at §1.30.

## III.    THE PROPOSED SETTLEMENTS ARE FAIR AND REASONABLE AND MORE THAN SATISFY THE CRITERIA FOR FINAL APPROVAL

### A.    Legal Standards for Final Approval of a Class Action Settlement

It is firmly established in the Tenth Circuit that courts favor the settlement of controversies. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *10 (N.D. Okla. Dec. 2, 2011). This is especially true in complex class actions such as this.  *See Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) ("settlements in class actions are favored"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) (in approving class action settlement, the court explained: "'[i]t is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies'") (quoting *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969)); *Williams Foods, Inc. v. Eastman Chem. Co.*, No. 99C16680, 2001 WL 1298887, at *2 (Kan. Dist. Ct. Aug. 8, 2001) ("Settlement is especially

favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources.").

The authority to grant or deny approval of a proposed settlement lies within the sound discretion of the Court. *See Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174-75 (10th Cir. 2016); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by, Devlin v. Scardelletti*, 536 U.S. 1 (2002). In exercising its discretion, the Court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) (citing *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910)).

In the Tenth Circuit, a class action settlement is entitled to final approval under Rule 23(e) provided it is "fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Four factors guide that assessment: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* As demonstrated below, the Settlements here satisfy each of the foregoing *Jones* factors and warrant final approval.

**B.      The Settlements Are Fair, Reasonable and Adequate**

**1.      The Settlements Were Fairly and Honestly Negotiated**

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *11 (W.D. Okla. Oct. 27, 2008). Where a settlement results from arm's-length negotiations between experienced counsel, courts "have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

Here, the four Settlements at issue are the product of hard-fought and multiple, protracted, arms'-length negotiations between Co-Lead Class Counsel and multiple firms representing the various Defendants. Joint Decl., ¶¶19-21, 71-73, 86-89. Co-Lead Class Counsel negotiated four separate agreements with different Defendants in separate and sequential negotiations, engaging in multiple negotiating sessions with each Defendant or group of Defendants. *Id.* The arms'-length nature of the parties' negotiations provide strong support for approval of the Settlements. As one court said:

> Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable. *See*, *e.g.*, *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting *Manual for Complex Litigation, Third* §30.42 (1995))), *cert. denied sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005).

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Childs*, 2011 WL 6016486, at *13 (recognizing presumption); *McNeely*, 2008 WL 4816510, at *12 (same); *see also Acevedo v. Southwest Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (where, as here, "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred," the Court may presume the settlement to be fair, adequate, and reasonable"), *report and recommendation adopted*, 2020 WL 85132, (D.N.M. Jan. 7, 2020).

Prior to reaching the various Settlements, Co-Lead Class Counsel had a detailed understanding, both factually and legally, of the strengths and weaknesses of the Classes' claims as well as the hurdles they would face if the litigation continued. Co-Lead Class Counsel's knowledge came from, among other things, litigating two motions to dismiss; analyzing the voluminous FTC record, which included both documents and testimony; analyzing the voluminous transactional data and the additional documents produced in this case; taking depositions of 1-800 Contacts and third-parties; working with consultants; working closely with experts and preparing two expert reports in support of class certification; preparing a motion for class certification; and defending the depositions of the Class representatives and Plaintiffs' two class certification experts, among other activities. Joint Decl., ¶11. While Co-Lead Counsel believe Plaintiffs' claims have substantial merit, they recognize the expense and uncertainty of continued litigation against Settling Defendants, and have taken into account the uncertain outcome and risks of further litigation in deciding to enter into these Settlements, which confer significant benefits on the Settlement Classes.

The Settlements are the result of fair and honest negotiations by parties – through their experienced counsel – that understood the strengths and weaknesses of their respective cases.

Accordingly, this *Jones* factor has been met and weighs in favor of the Court's final approval of the Settlement.

### 2. The Outcome of the Litigation Was Uncertain Because Serious Questions of Law and Fact Existed

The second factor considered by the Tenth Circuit in evaluating settlements is whether there were "serious questions of law and fact . . . [that] plac[ed] the ultimate outcome of the litigation in doubt." *Jones*, 741 F.2d at 324. In assessing the Settlements, the Court should balance the benefits of the substantial certain recovery for the Classes against the risks of continued litigation. *See Lucas*, 234 F.R.D. at 693. Here, a balance of these factors strongly supports the Court's final approval of the Settlements.

"[A]ntitrust cases, by their nature, are highly complex," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). "[A]ntitrust class actions are notoriously complex, protracted, and bitterly fought." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd*, *Wal-Mart Stores*, 396 F.3d at 96 (citing *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989)). This case is no different, and is especially complex given the evolving nature of the online contact lens market, the length of the Class Periods, and the intersection of antitrust and trademark law. "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).

Plaintiffs and their counsel faced numerous risks in proving their case and recognized that, in the absence of a settlement, they faced substantial challenges to obtaining **any** recovery for the Classes – let alone a recovery greater than the Settlement Amount. Although Plaintiffs were able to overcome Defendants' two motions to dismiss the Consolidated Complaint, "that ruling provides no

guarantee that the [plaintiff] will ultimately prevail on the merits." *Thornburg*, 912 F. Supp. 2d at 1142 (quoting *McNeely*, 2008 WL 4816510, at *13).

At every stage of the litigation, Defendants asserted numerous defenses to Plaintiffs' claims and would have continued to do so if the various Settlement agreements had not been reached.  For example, Defendants challenged Plaintiffs' ability to prove that the advertising suppression agreements caused Class Members to pay higher prices for contact lenses purchased online than they otherwise would have.  Defendants claimed the restrictions at issue were only partial advertising restrictions, not total bans on competitive advertising.  Defendants claimed it was uncertain whether Plaintiffs could establish that such partial advertising restrictions, which left other advertising open for competition, inflated prices consumers paid.  In seeking a schedule for *Daubert* motions, Defendants announced that they intended to seek to exclude some or all of the opinions offered by both of Plaintiffs' class certification experts.  If successful, such motions would have undermined Plaintiffs' class certification motion, potentially foreclosing Plaintiffs' chances of certifying a class. "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results for either side." *Lucas*, 234 F.R.D. at 694.  Serious questions of law and fact exist where disputes between the parties are "such that they could significantly impact this case if it were litigated." *Id.*; *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *13 (D. Colo. Sept. 9, 2019).  This factor therefore supports approval of the settlements.

Plaintiffs also potentially faced significant challenges in litigating their antitrust claims under a rule of reason approach.  While Plaintiffs believed the Court should apply a "quick look" standard to their claim, it was unclear whether the Court would agree to do so, and under a full rule of reason

- 14 -

approach, Plaintiffs would have faced the challenge of proving that on balance, the advertising restrictions at issue were anticompetitive, notwithstanding the contention that they protected Defendants' legitimate trademark interests.  Plaintiffs faced the additional challenge of persuading the Court that it could find Defendants violated federal antitrust law without having to relitigate the trademark claims that 1-800 Contacts brought or threatened against other retailers and determine the merits of those claims.

Even if Plaintiffs certified a class and survived summary judgment, success before a jury was far from guaranteed.  Trial would also be lengthy, with the losing party almost certain to appeal any adverse jury verdicts.  *See, e.g.*, *Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) ("It is evident from this case's long and complex history that any jury trial could have resulted in many different outcomes, and that a class victory was uncertain."); *Thornburg*, 912 F. Supp. 2d at 1242 ("Damages in this case . . . would likely have been reduced to a 'battle of the experts,' and 'it is virtually impossible to predict with any certainty which testimony would be credited.'").

The risks in maintaining an antitrust class action through trial are undeniably present in this case.  Each Settling Defendant is represented by able lawyers from leading law firms.  Settling Defendants were prepared, and had the wherewithal, to vigorously contest the existence and extent of liability, impact, and damages—at class certification, summary judgment, trial, and on appeal.

On balance, considering all the circumstances and risks that Plaintiffs would have faced if they continued to litigate through the completion of discovery, summary judgment and, if successful, trial, Plaintiffs and their counsel concluded that the Settlements − which provide a favorable and certain payment of $40 million – was in the best interests of the settling Classes.  Thus, this *Jones* factor strongly supports the Settlements' final approval.

**3.      Immediate Settlement Is More Beneficial to the Class than the Possibility of Recovery in the Future**

The third factor for evaluating whether a settlement is fair, reasonable and adequate is "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Jones*, 741 F.2d at 324; *see also Acevedo*, 2019 WL 6712298, at *3 ("'If this case were to be litigated, in all probability it would be many years before it was resolved.'") (quoting *Lucas*, 234 F.R.D. at 694). This factor is to be weighed "not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Wilkerson*, 171 F.R.D. at 283. Plaintiffs and their counsel have no doubts that the benefits of settling this case now are far superior to the risk of continued litigation.

Here, in addition to the particular risks faced in this litigation, Plaintiffs also considered the general risks and expense inherent in litigating a class action through trial. Absent the Settlements, Plaintiffs would have continued with their discovery efforts, including the continued review and analysis of voluminous document discovery and preparation for approximately 15-20 fact depositions. Plaintiffs would also have continued to litigate their motion for class certification, deposing Defendants' three experts and submitting a reply brief in support of their motion to certify the class, with accompanying expert rebuttal reports. Then Plaintiffs would have engaged in merits discovery, both as to fact and expert witnesses, often the most costly phase of complex litigation, and thereafter, Plaintiffs would have briefed summary judgment and prepared for trial. Thus, the costs and risks associated with prosecuting the Classes' claims to a verdict, not to mention through the inevitable appeals that would follow, would have been high. *See Lane*, 862 F. Supp. 2d at 1248 ("Pursuing the litigation further would require significant judicial and party resources to complete

motions for summary judgment, motions under *Daubert v. Merrell Dow Pharmaceuticals*, and motions *in limine*.  Any of those decisions could then be appealed to the Tenth Circuit along with any jury verdict that might be returned.").

Plaintiffs and their counsel believe that a significant recovery now is superior to the risk of proceeding with the litigation in the hope of a larger recovery at a later stage.  Thus, the third *Jones* factor strongly supports the Settlements.

### 4. Lead Plaintiffs and Their Counsel Believe that the Settlements Are Fair and Reasonable

Plaintiffs and their counsel believe that the Settlements are fair and reasonable in light of all of the circumstances of the case.  "'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'"  *Childs*, 2011 WL 6016486, at *14 (citing *Lucas*, 234 F.R.D. at 695, and *Marcus v. State of Kan. Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)); *see also Marcus*, 209 F. Supp. 2d at 1182 ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").  Further, a court is "'entitled to rely upon the judgment of experienced counsel for the parties [and] absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002).  Here, Co-Lead Class Counsel – two national law firms with extensive experience in the area of complex and class action litigation, particularly antitrust class actions, and which are intimately familiar with the facts of this litigation – believe the Settlements provide a fair, reasonable and adequate result for the Classes, in light of the risks and costs of continued litigation.  Joint Decl., ¶¶4, 118.

- 17 -

## IV.    THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

Following approval of the Settlements and the Effective Date, the Net Settlement Fund will be distributed to Authorized Claimants.  The proposed Plan of Distribution contained in the Notice details the manner in which the Net Settlement Fund will be allocated.  *See* ECF No. 321-5.

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to the approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692 (D. Colo. 2014); *Lucas*, 234 F.R.D. at 695 (same); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) (same), *aff'd*, 246 F.3d 681 (10th Cir. 2001).  To secure approval, a plan of allocation "'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'" *Lucas*, 234 F.R.D. at 695; *Law*, 108 F. Supp. 2d at 1196 (noting that substantial weight is given to opinions of experienced counsel regarding the fairness of allocation).  Courts do not demand perfection of a plan of distribution.  *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001).

Here, Co-Lead Class Counsel prepared the Plan of Distribution after careful consideration and detailed analysis, and with the assistance of their economics and damages consultants and experts.  Joint Decl., ¶¶11, 90.  The Plan of Distribution is based on an assessment of the damages that Co-Lead Class Counsel and their consultants/experts believe could have been recovered by Class Members had Plaintiffs prevailed at trial and reflects the risks of proving a violation of the federal antitrust law, including class-wide impact, causation, and damages.  The Plan of Distribution is premised on an out-of-pocket measure of damages and is designed to pay Class Members a portion of the difference between the prices Class Members paid for contact lenses purchased online

during the Class Periods and the prices they would have paid absent anticompetitive conduct. *Id.*, ¶90; *see also* ECF No. 321-5.

Under the Plan of Distribution, the Net Settlement Fund will be distributed as follows, which approximates the relative gross sales (in U.S. dollars) from the various Defendants during the relevant Class Periods as a percentage of the total of such sales from all Defendants:

- 74% shall be allocated to Allowed Claimants on Allowed Purchases from 1-800 Contacts;

- 20% shall be allocated to Allowed Claimants on Allowed Purchases from Walgreen Co., Walgreens Boots Alliance, Inc., or Vision Direct, Inc.;

- 4% shall be allocated to Allowed Claimants on Allowed Purchases from Arlington Contact Lens Service, Inc., and National Vision, Inc.; and

- 2% shall be allocated to Allowed Claimants on Allowed Purchases from Luxottica of America, Inc.

Payment amount will be based on a claimant's *pro rata* share of the Net Settlement Fund in the proportion that the claimant's total purchases from a given Defendant bears to the total purchases of all the authorized claimants for that Defendant. The administrator will total a claimant's *pro rata* share of the Net Settlement Fund allocated to each Defendant to get the claimant's total distribution. Thus, a claimant's payment will be proportionate to the amount of a claimant's purchases. *See O'Dowd*, 2019 WL 4279123, at *15 ("As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.") (quoting *Crocs*, 306 F.R.D. at 692 (quoting *Law*, 108 F. Supp. 2d at 1196). Courts favor plans that allocate funds on a *pro rata* basis. *Crocs*, 306 F.R.D. at 692 ("no indication that the Plan of Allocation favors certain class members at the expense of others"); *Newton v. Fortis Ins. Co.*, No. 04-cv-1650-PSF-OES, 2006 U.S.

- 19 -

Dist. LEXIS 33965, at *4 (D. Colo. May 26, 2006) (approving plan of allocation where the allocation was *pro rata* across the class).

The Plan of Distribution was disclosed in the Notice that was emailed to potential Settlement Class Members, and has been available on the settlement website along with other key documents. Accordingly, Plaintiffs and their counsel believe that this method of allocation has a reasonable and rational basis and is fair and equitable and therefore, warrants the Court's approval.

## V. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

The Court's preliminary approval orders preliminarily certified the Settlement Classes. ECF Nos. 150, 248, 273, 325. For all of the reasons detailed in Plaintiffs' preliminary approval motions (*see* ECF Nos. 139, 245, 263, 321) and the Court's preliminary approval orders, the proposed Settlement Classes satisfy all requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Rule 23(b)(3).

Since entry of the Preliminary Approval Orders, nothing has changed to alter the propriety of the Court's preliminary certifications of the four Settlement Classes and, for all the reasons stated in Plaintiffs' unopposed motions for preliminary approval of settlement and certification of class (*see* ECF Nos. 139, 245, 263, 321), incorporated herein by reference, Plaintiffs respectfully request that the Court affirm its preliminary certifications and finally certify the four Classes for purposes of carrying out the Settlements pursuant to Rules 23(a) and 23(b)(3) and appoint Interim Class Counsel as Class Counsel.

## VI. NOTICE TO THE CLASSES COMPLIED WITH DUE PROCESS

Notice of the Settlements to the Classes satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (notice need not be perfect or received by every class member, but instead be reasonable under the circumstances). "The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options." *Gottlieb*, 11 F.3d at 1013. The notice program utilized here, as set forth in the Court's Preliminary Approval Order, easily meets this standard.

The notice program was carried out by the Court-appointed Claims Administrator, CPT, under the supervision of Co-Lead Class Counsel. *See generally* Sarich Decl. As noted above, in accordance with the Preliminary Approval Order between July 2, 2020 and July 31, 2020, CPT e-mailed copies of the Short Form Notice to potential members of the four Classes identified in Defendants' transactional data. *Id.*, ¶11. CPT also engaged in an extensive social media campaign and caused the Summary Notice to be transmitted over the *PR Newswire*. *Id.*, ¶¶8-9, 20. In addition, a dedicated toll-free telephone number and website, www.onlinecontactlenssettlement.com, were established to assist potential Settlement Class Members with inquiries regarding the litigation, the Settlements and the claims process. *Id.*, ¶¶16-19. Court have repeatedly found similar notice plans to satisfy the requirements of Rule 23(c)(2)(B). *Id.*, ¶34.

The Notices contain the information required by Rule 23(c)(2)(B), including: (i) an explanation of the nature of the litigation and the claims asserted; (ii) the definition of the Classes preliminarily certified by the Court; (iii) a description of the basic terms of the Settlements, including the amount of the consideration and the releases to be given; (iv) the Plan of Distribution; (v) an explanation of the reasons why the parties are proposing the Settlements; (vi) a statement

indicating the attorneys' fees and expenses that will be sought as well as the Service Awards that will be sought for the Class representatives; (vii) a description of Settlement Class Members' right to request exclusion from the Class(es) or to object to the Settlements, the Plan of Distribution, and/or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members.  The Notices also provide recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the Net Settlement Fund.  *See* Sarich Decl., Ex. A at 8-9.

Lead Plaintiffs and their counsel have satisfied all of the elements of the notice plan approved by the Court.  *See generally* Sarich Decl.  Accordingly, the notice program implemented in this litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23, and the PSLRA.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Crocs*, 306 F.R.D. at 693.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the proposed Settlements as fair, reasonable, and adequate; (ii) approve the Plan of Distribution as fair and reasonable; and (iii) finally certify the four Settlement Classes for settlement purposes pursuant to Rules 23(a) and 23(b)(3).

DATED:  August 21, 2020                     Respectfully submitted,

                                            ROBBINS GELLER RUDMAN & DOWD LLP
                                            DAVID W. MITCHELL (Admitted *Pro Hac Vice*)
                                            BRIAN O. O'MARA (Admitted *Pro Hac Vice*)
                                            STEVEN M. JODLOWSKI (Admitted *Pro Hac Vice*)
                                            ASHLEY M. KELLY (Admitted *Pro Hac Vice*)


                                            s/ David W. Mitchell
                                            ———————————————————
                                            DAVID W. MITCHELL

4826-1939-9880.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

DATED:  August 21, 2020   BOIES SCHILLER FLEXNER LLP
            CARL GOLDFARB (Admitted *Pro Hac Vice*)

                s/ Carl Goldfarb
               CARL GOLDFARB
        (Signed by filing attorney with permission.)

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone:  954/356-0011
954/356-0022 (fax)

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT (Admitted *Pro Hac Vice*)
1401 New York Ave., NW
Washington, DC  20005
Telephone:  202/237-2727
202/237-6131 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT  84101
Telephone:  801/534-1700
801/364-7697 (fax)

Counsel for Plaintiffs

- 23 -