ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT  84101
Telephone:  801/534-1700
801/364-7697 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL
BRIAN O. O'MARA
STEVEN M. JODLOWSKI
ASHLEY M. KELLY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT
1401 New York Ave., NW
Washington, DC  20005
Telephone:  202/237-2727
202/237-6131 (fax)
  – and –
CARL GOLDFARB
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone:  954/356-0011
954/356-0022 (fax)

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| J THOMPSON, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>1-800 CONTACTS, INC., et al.,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:16-cv-01183<br><br>CLASS ACTION<br><br>Honorable Judge Tena Campbell<br>Honorable Magistrate Judge Dustin B. Pead<br><br>CO-LEAD CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO CLASS REPRESENTATIVES |

# TABLE OF CONTENTS

Page

RELIEF REQUESTED AND GROUNDS FOR RELIEF ............................................................1

I.     INTRODUCTION ..................................................................................................2

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.......................................4

     A.    Co-Lead Class Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund.........................................................................................4

     B.    The Requested Attorneys' Fees Are Reasonable as a Percentage of the Common Fund .........................................................................................6

     C.    The Circumstances of the Litigation Examined in Light of the Relevant *Johnson* Factors Justify the Fee Award ................................................................8

          1.    The Amount Involved and the Results Obtained Support the Fee Award...............................................................................................9

          2.    The Time and Labor Required Support the Fee Award...........................10

          3.    The Novelty and Difficulty of the Questions Support the Fee Award...............................................................................................13

          4.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys Support the Fee Award.......................................................................................16

          5.    The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case Supports the Fee Award ....................................17

          6.    The Customary Fee and Fee Awarded in Similar Cases Support the Fee Award.......................................................................................18

          7.    The Fact that the Fee Is Contingent Supports the Fee Award ..................18

          8.    The "Undesirability" of the Case Supports the Fee Award ......................19

          9.    The Nature and Length of the Professional Relationship with the Client...............................................................................................21

III.    THE REQUESTED EXPENSES ARE REASONABLE .................................................21

IV.    PLAINTIFFS SHOULD BE AWARDED REASONABLE SERVICE AWARDS .........22

V.    CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Merit Energy Co.*,
   Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW, 2009 WL 3378526
   (D. Colo. Oct. 20, 2009) ........................................................................................7

*Apple Inc. v. Pepper*,
   __ U.S. __, 139 S. Ct. 1514 (2019)........................................................................19

*Aragon v. Clear Water Prods. LLC*,
   No. 15-CV-02821-PAB-STV, 2018 WL 6620724
   (D. Colo. Dec. 18, 2018).......................................................................................11

*Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)................................................................................................5

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)................................................................................................5

*Been v. O.K. Indus., Inc.*,
   No. CIV-02-285-RAW, 2011 WL 4478766
   (E.D. Okla. Aug. 16, 2011)...................................................................................12

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................6, 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................................4

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*,
   8 F.3d 722 (10th Cir. 1993) ............................................................................12, 22

*Brewer v. S. Union Co.*,
   607 F. Supp. 1511 (D. Colo. 1984).........................................................................5

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ...................................................................... *passim*

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................6

*Campbell v. C.R. Eng., Inc.*,
   No. 2:13-cv-00262, 2015 WL 5773709
   (D. Utah Sept. 30, 2015) ......................................................................................13

**Page**

*Cecil v. BP Am. Prod. Co.*,
No. 16-CV-00410-KEW, 2018 WL 8367957
(E.D. Okla. Nov. 19, 2018) ............................................................................................21, 22

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
888 F.3d 455 (10th Cir. 2017) ........................................................................................7, 23

*Chieftain Royalty Co. v. Marathon Oil Co.*,
No. CIV-17-334-SPS, 2019 WL 7758915
(E.D. Okla. Mar. 8, 2019) ......................................................................................................13

*Chieftain Royalty Co. v. XTO Energy Inc.*,
No. CIV-11-29-KEW, 2018 WL 2296588
(E.D. Okla. Mar. 27, 2018) ....................................................................................................12

*Childs v. Unified Life Ins. Co.*,
No. 10-CV-23-PJC, 2011 WL 6016486
(N.D. Okla. Dec. 2, 2011) ........................................................................................................7

*Cobell v. Salazar*,
679 F.3d 909 (D.C. Cir. 2012) ..............................................................................................22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ..................................................................................................................19

*CompSource Okla. v. BNY Mellon, N.A.*,
No. CIV 08-469-KEW, 2012 WL 6864701
(E.D. Okla. Oct. 25, 2012) .......................................................................................................7

*Cook v. Rockwell Int'l Corp.*,
No. 90-CV-00181-JLK, 2017 WL 5076498
(D. Colo. Apr. 28, 2017) ........................................................................................................13

*Droegemueller v. Petroleum Dev. Corp.*,
Nos. 07-cv-1362-JLK-CBS, 07-cv-2508, 2009 WL 961539
(D. Colo. Apr. 7, 2009) ...........................................................................................................23

*Fallen v. GREP Sw., LLC*,
247 F. Supp. 3d 1165 (D.N.M. 2017) ......................................................................................6

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ...........................................................................................5, 6, 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................................................................9

- iii -

Page

*Hershey v. ExxonMobil Oil Corp.*,
    No. 07-1300-JTM, 2012 WL 5306260
    (D. Kan. Oct. 26, 2012),
    *aff'd in part, dismissed in part*,
    550 F. App'x 566 (10th Cir. 2013) ......................................................................................23

*In re BankAtlantic Bancorp, Inc.*,
    No. 07-61542-CIV, 2011 WL 1585605
    (S.D. Fla. Apr. 25, 2011),
    *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ............................................................................................19

*In re Checking Account Overdraft Litig.*,
    No. 09-MD-02036-JLK, 830 F. Supp. 2d 1330
    (S. D. Fla. Nov. 22, 2011) ..................................................................................................20

*In re Copley Pharm., Inc.*,
    1 F. Supp. 2d 1407 (D. Wyo. 1998) .....................................................................................6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).....................................................................................................6

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) .........................................................................................9

*In re MiniScribe Corp.*,
    309 F.3d 1234 (10th Cir. 2002) ..........................................................................................13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    No. MDL 2328, 2015 WL 4528880
    (E.D. La. July 27, 2015)......................................................................................................20

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1143 (D. Colo. 2009)...........................................................................13, 18

*In re Qwest Commc'ns. Int'l, Inc. Sec. Litig.*,
    No. 01-cv-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71267
    (D. Colo. Sept. 29, 2006) ........................................................................................12, 16, 20

*In re Rail Freight Fuel Surcharge Antitrust Litig. MDL 1869*,
    725 F.3d 244 (D.C. Cir. 2013),
    *aff'd*, 934 F.3d 619 (D.C. Cir. 2019) .................................................................................19

**Page**

*In re Thirteen Appeals Arising out of the San Juan Dupont*
   *Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995),
   *aff'd*, 93 F.3d 1 (1st Cir. 1996) ...................................................................................6

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ....................................................................15

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   No. 02-MD-1468-JWL, 2011 WL 1808038
   (D. Kan. May 12, 2011) ..........................................................................................24

*In re Urethane Antitrust Litig.*,
   No. 04-1616-JWL, 2016 WL 4060156
   (D. Kan. July 29, 2016) .........................................................................................7, 9

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003),
   *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...................................................................................5, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ....................................................................................6

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ........................................................................... *passim*

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) .......................................................................................6

*Lane v. Page*,
   862 F. Supp. 2d 1182 (D.N.M. 2012) ..................................................................7, 8, 9

*Lucas v. Kmart Corp.*,
   No. 99-01923 JLK-CBS, 2006 WL 2729260
   (D. Colo. July 27, 2006) ..........................................................................................20

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*,
   No. 09-cv-01543-REB-KMT, 2010 WL 5387559
   (D. Colo. Dec. 22, 2010) ...................................................................................7, 23, 24

*McClintock v. Continuum Producer Servs., L.L.C.*,
   No. 6:17-CV-00259-JAG, 2020 WL 3022744
   (E.D. Okla. June 4, 2020) .........................................................................................23

**Page**

*McKnight Realty Co. v. Bravo Arkoma, LLC*,
   No. 17-CV-00308-KEW, 2018 WL 10373736
   (E.D. Okla. Dec. 21, 2018) ...................................................................8, 11

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 WL 4816510
   (W.D. Okla. Oct. 27, 2008) ........................................................................10

*Mishkin v. Zynex, Inc.*,
   No. 09-cv-00780-REB-KLM, 2012 WL 4069295
   (D. Colo. Sept. 14, 2012) ...........................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
   473 U.S. 614 (1985) ......................................................................................5

*Mo. v. Jenkins ex rel. Agyei*,
   491 U.S. 274 (1989) ....................................................................................12

*Nieberding v. Barrette Outdoor Living, Inc.*,
   129 F. Supp. 3d 1236 (D. Kan. 2015) .........................................................23

*Ohio v. Am. Express Co.*,
   __ U.S. __, 138 S. Ct. 2274 (2018) .............................................................19

*Paola Beltran v. InterExchange, Inc.*,
   No. 14-cv-03074-CMA-KMT, 2019 WL 3496692
   (D. Colo. Aug. 1, 2019) ................................................................................8

*Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*,
   No. 05-445 (C), 2009 WL 2836508
   (W.D. Okla. July 30, 2009) ......................................................................8, 24

*Ramah Navajo Chapter v. Jewell*,
   167 F. Supp. 3d 1217 (D.N.M. 2016) ..........................................................17

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) .............................................................................6

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) .......................................................................................6

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................22

- vi -

Page

*Shaw v. Interthinx, Inc.*,
  No. 13-CV-01229-REB-NYW, 2015 WL 1867861
  (D. Colo. Apr. 22, 2015) ...............................................................................7, 11, 21

*Stalcup v. Schlage Lock Co.*,
  505 F. Supp. 2d 704 (D. Colo. 2007) .......................................................................17

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) .....................................................................................7

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014) .......................................................................18

*UFCW Local 880-Retail Food Emps. Joint Pension Fund v.
  Newmont Mining Corp.*,
  352 F. App'x 232 (10th Cir. 2009) ...........................................................................23

*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972),
  *aff'd*, 414 U.S. 801 (1973) ..........................................................................................5

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)........................................................................................................4

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) ...................................................................................6, 8

*Vaszlavik v. Storage Technology Corp.*,
  No. 95-B-2525, 2000 WL 1268824
  (D. Colo. Mar. 9, 2000).......................................................................................18, 21

*Weseley v. Spear, Leeds & Kellogg*,
  711 F. Supp. 713 (E.D.N.Y. 1989) ...........................................................................13

*Whittington v. Taco Bell of Am., Inc.*,
  No. 10-CV-01884-KMT-MEH, 2013 WL 6022972
  (D. Colo. Nov. 13, 2013) .............................................................................................7

*Williams v. Sprint/United Mgmt. Co.*,
  No. 03-2200-JWL, 2007 WL 2694029
  (D. Kan. Sept. 11, 2007) ..............................................................................................8

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(h) ................................................................................................................................1

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

Pursuant to Fed. R. Civ. P. 23(h), Co-Lead Class Counsel, Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd, LLP,[1] having obtained $40 million ("Settlement Fund") for the benefit of the Settlement Classes, respectfully move this Court for: (i) an award of attorneys' fees in the amount of 33% of the Settlement Fund, plus accrued interest on such attorneys' fees; (ii) an award of $4,108,181.96 for expenses and charges reasonably incurred in the prosecution of this action, plus accrued interest on such costs and expenses; and (iii) service awards of $12,500 for each of the Class representatives.[2] As explained below, the requested fee award is supported by each of the *Johnson* factors used by the Tenth Circuit when evaluating fee applications.

With respect to Co-Lead Class Counsel's request for an award of the out-of-pocket expenses incurred while prosecuting this action, these expenses were all incurred for the benefit of the Settlement Classes, and they were essential to the result achieved. Co-Lead Class Counsel advanced out-of-pocket expenses with no guarantee that any would be reimbursed and exercised careful judgment when incurring these expenses. In addition, the service awards sought by Plaintiffs[3] are

---

[1]   The Court appointed Boies Schiller Flexner LLP and Robbins Geller Rudman & Dowd LLP as interim co-lead class counsel on May 10, 2017. ECF No. 70. In granting preliminary approval to the four settlements, the Court preliminary appointed interim co-lead class counsel as Class Counsel or Co-Lead Class Counsel for each Settlement Class. ECF Nos. 150 at 3, 248 at 3, 273 at 4, 325 at 6.

[2]   All capitalized terms that are not defined herein have the same meanings ascribed to them in the Settlement Agreements between Plaintiffs and Defendants (ECF Nos. 139-2, 245-2, 263-2, and 321-7, Ex. A) and the Joint Declaration of David W. Mitchell and Carl Goldfarb in Support of Plaintiffs' Motion for Final Approval of Settlement Agreements and Co-Lead Class Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Service Awards to Class Representatives (the "Joint Declaration" or "Joint Decl."), filed concurrently. Unless otherwise noted, citations are omitted and emphasis is added.

[3]   Plaintiffs are J Thompson, Iysha Abed, Daniel J. Bartolucci, William P. Duncanson, Tyler Nance, Leia Pinto, Jill Schulson, and Edward Ungvarsky.

reasonable and in line with similar awards approved in this Circuit.  Plaintiffs respectfully request that this Motion be granted.

## I.     INTRODUCTION

After more than three years of hard-fought litigation, Co-Lead Class Counsel successfully negotiated a series of four all-cash settlements with Defendants (collectively, "the Settlements") for a total $40 million.  The Settlements are a highly favorable result for the members of the four Settlement Classes ("Classes") and will bring to a close this contentious and challenging action.  By these Settlements, Plaintiffs avoid the substantial risks of continued litigation in this cutting edge action at the intersection of antitrust and trademark law, while securing a significant recovery.

The Settlements were achieved through the diligent efforts of Plaintiffs and Co-Lead Class Counsel who, to date, have received no compensation and who undertook this case knowing recovery of any attorneys' fees was wholly contingent upon the result achieved.  As detailed in the Joint Declaration, Co-Lead Class Counsel performed extensive work to achieve this result.  *See generally* Joint Decl., ¶¶10-105.

This was not a simple case.  Co-Lead Class Counsel faced significant challenges and risks because of the formidable liability and damages defenses raised by Defendants' skilled counsel.  To certify a class and later to prevail at summary judgment and trial, Plaintiffs had to demonstrate, among other things, that a partial advertising restriction which left other channels of advertising open for unfettered competition had the effect of raising the prices that all or most Class Members paid for contact lenses purchased online from Defendants.  If the Court chose to apply a full rule of reason analysis, Plaintiffs also faced the challenge of demonstrating that any price differential was not caused by a difference in brand recognition or service, and that the anticompetitive effects of the

- 2 -

advertising agreements outweighed the alleged procompetitive justification, protecting the Defendants' trademarks.

Advancing substantial costs with a risk of not being reimbursed, Co-Lead Class Counsel engaged a number of experts to help meet these challenges. Out-of-pocket expert bills alone amounted to over $3.45 million.

When counsel take risks like these and secure excellent results while enforcing the nation's antitrust laws, public policy dictates that their work be compensated with a fair and reasonable fee. In this case, 33% of the Settlement Fund, or $13,200,000, plus accrued interest, is a fair and reasonable fee. As discussed herein, the requested fee is fair and reasonable, particularly in light of the highly favorable recovery obtained for the Classes, is well within the range of percentage attorneys' fees awarded in antitrust class actions and other comparable class actions within this Circuit and is fully supported by the Tenth Circuit's "*Johnson* factors." *See* §II.C, below. In total, Co-Lead Class Counsel and their paraprofessionals spent over 21,600 hours in prosecuting this Litigation for an aggregate lodestar of $12,823,129. A 33% fee award results in a fee award in line with Co-Lead Class Counsel's lodestar – yet another indication of reasonableness. *See* §II.C.2, below.

The expenses requested by Co-Lead Class Counsel are also reasonable and were necessary for prosecution of this litigation over more than three years. The vast majority of the expenses is to cover the costs of expert witnesses who submitted reports in this action, as well as several non-testifying consultants. *See generally* Joint Decl., ¶¶112-117. In addition, Plaintiffs are requesting service awards of $12,500 each in connection with the time they spent in representing the Settlement Classes. *Id.*, ¶8.

Co-Lead Class Counsel's request for fees and costs was disclosed in Plaintiffs' robust notice plan, which advised recipients that counsel will apply to the Court for attorneys' fees of up to 33% of the Settlement Fund and expenses not to exceed $4.5 million, plus interest on the fees and expenses at the same rate as earned by the Settlement Fund, to be paid from the Settlement Fund. The Plan also advised that Co-Lead Class Counsel may seek up to $12,500 per Class Representative in service awards, or a total of up to $100,000, for their costs and expenses incurred in representing the Settlement Classes. ECF No. 321-2 at 15-16.[4]

For all the reasons set forth herein, Co-Lead Class Counsel respectfully request that the Court approve their request for attorneys' fees and expenses, and service awards for the Class Representatives in connection with their representation of the Settlement Classes.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.     Co-Lead Class Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013). The purpose of this common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to prevent unjust enrichment of persons who benefit from a lawsuit without bearing its cost. *See Boeing*, 444 U.S. at 478. The Tenth Circuit has explicitly recognized this Court's authority to award attorneys' fees from a common fund in situations where, as here, the common fund is the result of the attorney's

---

[4]     The deadline to object to any aspect of the Settlements, including Co-Lead Class Counsel's fee and expense request, is September 21, 2020. Co-Lead Class Counsel will address any objections in their reply papers to be filed with the Court on September 28, 2020.

successful prosecution of the action.  *See, e.g.*, *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994);

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

Under the common fund doctrine, "public policy considerations support a substantial fee

award" because the "fees awarded must be reasonable, but they must also serve as an inducement for

lawyers to make similar efforts in the future."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297

F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396

F.3d 96 (2d Cir. 2005).  "The attorneys' fees provisions of the antitrust laws and the common fund

doctrine are designed to encourage the representation of plaintiffs in difficult and complex cases and

in situations where plaintiffs cannot otherwise afford representation."  *Brewer v. S. Union Co.*, 607

F. Supp. 1511, 1532 (D. Colo. 1984).

Vigorous enforcement of antitrust laws is particularly important for the national welfare.  As

the Supreme Court has explained: "Antitrust laws in general, and the Sherman Act in particular, are

the Magna Carta of free enterprise.  They are as important to the preservation of economic freedom

and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal

freedoms."  *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972), *aff'd*, 414 U.S. 801

(1973).  The Court has also "characterized the Sherman Antitrust Act as 'a charter of freedom' that

may fairly be compared to a constitutional provision."  *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth Inc.*, 473 U.S. 614, 651 (1985).

Thus, the policy justification for the common fund doctrine is especially strong in antitrust

cases like this case.  *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 345 (1990) (noting

antitrust plaintiffs help "'vindicate the public interest in antitrust enforcement'" and "'perform the

office of a private attorney general'") (citing *Associated Gen. Contractors of Cal. Inc. v. Cal. State*

*Council of Carpenters*, 459 U.S. 519, 542 (1983)); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (private antitrust suits "provide a significant supplement to the limited resources available to the [government] for enforcing the antitrust laws and deterring violations").

**B.      The Requested Attorneys' Fees Are Reasonable as a Percentage of the Common Fund**

In *Brown*, the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case. *Brown*, 838 F.2d at 454-55. Cases following *Brown* confirm a "*preference*" in this Circuit for the percentage method. For example, in *Gottlieb*, the court stated:

> In our circuit, following *Brown* and *Uselton*, either [the percentage or lodestar] method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method.

43 F.3d at 483; *see also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993).[5] The percentage method also is consistent with arrangements in the private marketplace for contingency cases, in which individual clients typically agree to a fee based on the amount recovered. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984).[6]

---

[5]      Courts have recognized a number of advantages to the percentage method. *See Gottlieb*, 43 F.3d at 484 (percentage method for setting a fee "is less subjective than the lodestar plus multiplier approach," matches the marketplace most closely, thus providing better incentive to counsel, and is better suited where class counsel "was initially retained on a contingent fee basis"); *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1190 (D.N.M. 2017) (percentage approach "'rewards counsel for success and penalizes counsel for waste or failure'"). The percentage method is also easier to apply. "Simply put, it is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation." *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998).

[6]      Most federal courts of appeals have approved the use of the percentage method of awarding fees in common fund cases. *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995), *aff'd*, 93 F.3d 1 (1st Cir. 1996); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768,

For their efforts in creating a $40 million common fund, Co-Lead Class Counsel seek a reasonable percentage of the fund recovered as attorneys' fees. Their request for a 33% fee, plus interest at the same rate as earned by the Settlement Fund, falls within the range of fee percentages awarded in antitrust class actions and other comparable class actions in this Circuit.

In *Brown*, the Tenth Circuit recognized that a typical percentage award in a common fund case is around one-third of the recovery. 838 F.2d at 455 n.2; *see also Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 459 (10th Cir. 2017) ("*Chieftain I*") ("empirical studies show that the average fee award is about one-third of the recovery" in contingency cases). District courts in this Circuit have repeatedly agreed.[7] Large, complex antitrust cases, in particular, present considerable risk and require extensive work, and thus courts often award fees at or even above the percentage requested here. *See In re Urethane Antitrust Litig.*, No.

---

774 (11th Cir. 1991) ("After reviewing *Blum*, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the **only** permissible measure of awarding fees in common fund cases).

[7]   *See, e.g.*, *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("'The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.'") (quoting *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010)); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (same); *Lane v. Page*, 862 F. Supp. 2d 1182, 1256 (D.N.M. 2012) ("The Court has recognized in other cases that '[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.'"); *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("An award of 25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases."); *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *15 (N.D. Okla. Dec. 2, 2011) (stating, in class action regarding excessive premiums, "fees in the range of one-third of the common fund are frequently awarded in class action cases of this general variety"); *Anderson v. Merit Energy Co.*, Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.").

04-1616-JWL, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding 33.33% of $835 million settlement).

Co-Lead Class Counsel are limiting their fee request to 33% of the Settlement Fund, even though courts in this Circuit have repeatedly said a higher percentage can be appropriate and have awarded a higher percentage in fees in some common fund cases.  *See Paola Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-KMT, 2019 WL 3496692, at *1 (D. Colo. Aug. 1, 2019) (awarding 35% of settlement in fees in a common fund case settled before trial); *McKnight Realty Co. v. Bravo Arkoma, LLC*, No. 17-CV-00308-KEW, 2018 WL 10373736 (E.D. Okla. Dec. 21, 2018) (awarding 40% of settlement proceeds as attorneys' fees in common fund case); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *3 (W.D. Okla. July 30, 2009) (affirming 40% fee award in common fund case settled before trial); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding 35% after four years of litigation and before trial).

### C.    The Circumstances of the Litigation Examined in Light of the Relevant *Johnson* Factors Justify the Fee Award

The Tenth Circuit has recognized that in determining the appropriate percentage to award as attorneys' fees in a common fund case, the analysis should be informed by the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See also Brown*, 838 F.2d at 454-55; *Uselton*, 9 F.3d at 853; *Lane*, 862 F. Supp. 2d at 1251 (the Tenth Circuit "has adopted" the Fifth Circuit Test in *Johnson*).  The *Johnson* factors are as follows:

> (1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . .

(9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he "undesirability" of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases.

488 F.2d at 717-19 (emphasis omitted).  The weight to be given to each factor varies from case to case, and each factor is not always applicable in every case.  *See Gottlieb*, 43 F.3d at 483 n.4; *Lane*, 862 F. Supp. 2d at 1236 ("'[R]arely are all of the *Johnson* factors applicable.'").  As set forth below, application of the relevant *Johnson* factors supports Co-Lead Class Counsel's fee request.[8]

### 1.    The Amount Involved and the Results Obtained Support the Fee Award

While listed as the eighth *Johnson* factor, the result achieved for the class is often the most important.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Brown*, 838 F.2d at 456 (in a common fund case the results obtained may be given greater weight); *Urethane*, 2016 WL 4060156, at *4 ("'the [eighth] *Johnson* factor – the amount involved and the results obtained – may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class'"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

As detailed above, Co-Lead Class Counsel have obtained a recovery of $40 million for the four Settlement Classes.  Co-Lead Class Counsel's ability to obtain a substantial recovery from aggressive, well-funded Defendants represented by experienced and capable counsel is a testament to the skill with which Co-Lead Class Counsel has prosecuted this case.  Co-Lead Class Counsel overcame significant challenges to obtain this result.  Although Plaintiffs survived a motion to

---

[8]    The following *Johnson* factor does not pertain to this action: the time limitations imposed by the client.

dismiss, "that ruling provides no guarantee that [the plaintiff] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). This is a cutting edge case at the intersection of antitrust and trademark law, and Co-Lead Class Counsel faced, among other issues (discussed more below), the challenges of showing that a series of agreements by competitors not to compete for certain internet advertising, while leaving numerous other advertising channels open for competition, had an impact on the prices that online consumers paid for contact lenses purchased from the Defendants, and moreover, an impact on price across dozens of products for more than a decade. And under a rule of reason analysis that Defendants claim applies, Plaintiffs also faced the burden of demonstrating that the anticompetitive effects of the agreements outweighed Defendants' interests in protecting their trademarks.

The Settlements also avoid the costs, delays, and risks of continued litigation, *i.e.*, class certification, *Daubert* motions, motions for summary judgment, a lengthy trial and subsequent appeals. Were Defendants to prevail on any of their arguments at class certification, summary judgment, or trial, Plaintiffs might well not have been able to obtain any recovery at all, or in the alternative, would have secured, at most, a reduced recovery.

Without Co-Lead Class Counsel's dedication and hard work throughout the course of this three and one-half year Litigation, this recovery for the Classes would not have been possible. Thus, this factor strongly supports Co-Lead Class Counsel's fee request.

### 2. The Time and Labor Required Support the Fee Award

While the time and labor required to successfully prosecute this Litigation fully justifies the requested fee, the Tenth Circuit has found this *Johnson* factor to be of less importance in a common

fund case, such as this case.  *Brown*, 838 F.2d at 456 ("In a common fund case, however, although time and labor required are appropriate considerations, the ninth *Johnson* factor – the amount involved and the results obtained – may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing the recovery on behalf of the class.").  For more than three years, Co-Lead Class Counsel dedicated substantial time and financial resources to litigating this case.  The activities by Co-Lead Class Counsel ranged from investigating the facts and legal theories that formed the basis for the allegations, to defeating Defendants' two motions to dismiss, to engaging in years of extensive party and third-party discovery  to drafting and filing a motion for class certification, which was supported by reports from multiple experts, and everything in between.  Joint Decl., ¶¶9-105.

To accomplish these and related tasks, Co-Lead Class Counsel and their paralegals devoted over 21,690 hours to this Litigation.  Co-Lead Class Counsel's hard work secured this highly favorable recovery for the settlement Classes, and the time and labor expended by Co-Lead Class Counsel, the first of the *Johnson* factors, support the reasonableness of the requested fee.  *See McKnight Realty*, 2018 WL 10373736, at *4 ("The Joint Declaration of Class Counsel shows the law firms invested substantial time in researching, investigating, prosecuting, and resolving this case.  Joint Decl., ¶¶4-20, 38.  I find that this factor supports the Fee Request."); *Aragon v. Clear Water Prods. LLC*, No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *5 (D. Colo. Dec. 18, 2018) ("Given the substantial amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of plaintiffs' requested fee award."); *Shaw*, 2015

WL 1867861, at *5 ("Counsel made a significant time investment in this case, and thus, the 'time and labor' factor favors the requested fee award.").[9]

To date, Co-Lead Class Counsel have dedicated 19,984 hours to this case, and their paralegals have spent 1,706 additional hours working on this matter, with a resulting lodestar of $12,823,129 at current hourly rates,[10] which is in line with what Co-Lead Class Counsel is seeking in fees.[11] This confirms that the requested fee is reasonable, as it is well below the typical multiplier in a common fund case. *In re Qwest Commc'ns. Int'l, Inc. Sec. Litig.*, No. 01-cv-01451-REB-CBS,

---

[9]   Although supportive of counsel's request here, it is not necessary to conduct a lodestar analysis when considering the time and labor required by a common fund case. *See Brown*, 838 F.2d at 456 ("We hold here only that in awarding attorneys' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record."); *see also Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.").

[10]   The Supreme Court and courts in this Circuit have endorsed use of current hourly rates to compensate counsel who continue to work on the matter for the delay in receiving payment. *See Mo. v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989) (noting "compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed" and endorsing "application of current rather than historic hourly rates" to make up for the delay in payment); *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 726 (10th Cir. 1993) (delay in payment may be remedied by application of current rather than historic hourly rates); *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *11 (E.D. Okla. Aug. 16, 2011) (applying current hourly rates to compensate counsel for delay in payment).

[11]   Co-Lead Class Counsel's time and expenses are detailed in the Declaration of David W. Mitchell Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Mitchell Fee Declaration"), and the Declaration of Carl E. Goldfarb, Filed on Behalf of Boies Schiller Flexner LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Goldfarb Fee Declaration"), submitted herewith. Co-Lead Class Counsel's combined lodestar does ***not*** include time incurred by Counsel other than Class counsel. Nor does it include the substantial additional hours and resources that necessarily will be expended assisting members of the Class, shepherding the claims process, preparing for and appearing at the Final Approval Hearing and responding to any associated objections and related appeals – further work benefitting the Classes that could potentially last for years and which will go uncompensated. Co-Lead Class Counsel have not included this time in their lodestar and will not seek additional fees.

2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006) ("*Qwest I*") ("lead counsel who

create a common fund for the benefit of a class are rewarded with fees that often are at least two

times the reasonable lodestar figure").[12]

### 3. The Novelty and Difficulty of the Questions Support the Fee Award

The novelty and difficulty of the issues in a case is a significant factor to be considered in

making a fee award.  *See Johnson*, 488 F.2d at 718.  "[A]ntitrust cases, by their nature, are highly

complex."  *Wal-Mart Stores*, 396 F.3d at 122.  "Antitrust class actions 'are notoriously complex,

protracted, and bitterly fought.'"  *Visa Check/Mastermoney*, 297 F. Supp. 2d at 510 (citing *Weseley*

*v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989)).

All the risks described herein demonstrate that this case is no different.  Co-Lead Class

Counsel had to master the details of the market for online contact lens sales and paid search

advertising and address intertwined antitrust and trademark issues to be able to effectively litigate

complex legal issues in this action.  Co-Lead Class Counsel coordinated closely with industry

experts to ensure that the significance of the data and documentary evidence was recognized, and

---

[12]   In class actions in this Circuit, courts commonly award lodestar multipliers of 2.5 or higher in
cases where counsel obtains a successful result and ran a significant risk of not attaining any recovery
at all, further underscoring the reasonableness, of counsel's fee request here.  *See, e.g.*, *Chieftain
Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS, 2019 WL 7758915, at *10 (E.D. Okla. Mar. 8,
2019) (approving a lodestar multiplier of 2.57 and fining "[t]his multiplier is well within the range of
multipliers approved in the Tenth Circuit, and other circuits, when a lodestar cross-check is used");
*Cook v. Rockwell Int'l Corp.*, No. 90-CV-00181-JLK, 2017 WL 5076498, at *2, *4 (D. Colo. Apr. 28,
2017) (collecting federal cases to support conclusion that "multiplier of 2.41 is within the range of
those frequently awarded in common fund cases"); *Campbell v. C.R. Eng., Inc.*, No. 2:13-cv-00262,
2015 WL 5773709, at *7 n.5 (D. Utah Sept. 30, 2015) (finding "lodestar crosscheck calculation here
results in multiplier of 2.9, which is within a reasonable range" of approved multipliers within the
Tenth Circuit); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D.
Colo. Sept. 14, 2012) (collecting cases from district courts in the Tenth Circuit approving multipliers
ranging from 2.5 to 4.6); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1148 (D.
Colo. 2009) ("*Qwest II*") (awarding fee equivalent to "a multiple of about 3.3 times the lodestar
amount"); *see also In re MiniScribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming
application of a 2.57 multiplier in a matter that was not a common fund case).

that the evidence was identified and understood in its proper economic context.  Complexity was also inherent as the agreements spanned 15 years, and the restrictions affected search advertising from the birth of the online contact lens market (leaving no "clean" before or after periods against which Plaintiffs could measure the harm).

Starting with their motion to dismiss the complaint, Defendants hammered on the point that a partial advertising restriction did not and could not lead to an impact in price.  *See*, *e.g.*, ECF No. 116 at 1 ("Plaintiffs focus on Defendants' agreements concerning advertising in response to online searches by consumers for certain contact lens sellers' trademarks, but Plaintiffs ignore wide swaths of other online and non-online advertising not at all impacted by the agreements.  Nor do Plaintiffs allege that Defendants agreed to forgo using other, non-trademarked keywords, such as 'cheap contact' lenses in their online advertising."); *id.* at 14 n.4 (same); ECF No. 148 at 3 (same).

While this Court held that Plaintiffs stated a claim in denying Defendants' motion to dismiss, the Defendants, and especially 1-800 Contacts, continued to aggressively push this argument.  To certify the class, Co-Lead Class Counsel had to show that the partial restriction on advertising caused prices paid by online consumers to be inflated above the level that would have prevailed in a competitive market.  Defendants argued that Plaintiffs also had to show that: (1) Plaintiffs had classwide evidence to establish impact over the lengthy class period and the hundreds of different products sold by 1-800 Contacts, as 1-800 Contacts claimed its pricing strategy varied across products and in different stages of a product's life span; (2) the prices were inflated above a competitive level even after giving 1-800 Contacts an appropriate premium for brand recognition and service (or explaining why it was not entitled to any such premium); (3) the overwhelming majority of class members were adversely impacted by Defendants' conduct after accounting, not

only any premium for brand recognition and/or service, but also the effects of manufacturers

Uniform Pricing Policy, which set a floor for pricing of key brands of contacts and caused many of

1-800 Contacts' rivals to raise their prices on the affected brands; and (4) a price impact after

accounting for 1-800 Contacts' four-year Alliance with Walmart during which the two companies

charged the same price for contacts sold by 1-800 Contacts online and by Walmart in its vision

centers.  1-800 Contacts vigorously pressed these arguments in its opposition to Plaintiffs' motion

for class certification and in its accompanying expert reports, *see*, *e.g.*, ECF Nos. 297-2, Dr. Ghose

Rpt. at 4-6 (summary of argument) & Ex. 297-3, Dr. Haider Rpt. at 4-15 (summary of conclusions),

and almost certainly have continued to press these arguments in any summary judgment motion.

The parties' respective experts disagreed about all these issues.  *Compare* ECF No. 286-1, Dr. Evans

Rpt., ¶¶123-135 & Appendix D *with* ECF No. 297-3, Dr. Haider's Rpt., ¶¶123-130.

Those were all issues the Plaintiffs would have to confront at class certification and again on

the merits at summary judgment and trial.  If the Court applied a full Rule of Reason analysis,

Plaintiffs would also have had to establish that Defendants' conduct could not be justified by

Defendants' interest in protecting their trademarks.  And they would have had to show that the Court

could reach that conclusion, without re-litigating the merits of the underlying trademark litigation,

which led to numerous anticompetitive agreements, or the threatened litigation that led to others.

Accordingly, while Co-Lead Class Counsel believe they had the better of the arguments,

defeating Defendants' arguments regarding impact, liability, and damages at class certification,

summary judgment, trial, and possibly on appeal would have been time-consuming and risky.[13]  It

---

[13]   *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012) ("Damages in this case . . . would likely have been reduced to a 'battle of the experts,' and 'it is virtually impossible to predict with any certainty which testimony would be credited.'").

4827-6626-6568.v1

was only because Co-Lead Class Counsel presented a credible threat of being able to do so, through their litigation of this case, that the other Defendants and then 1-800 Contacts were willing to pay the substantial amount they did to resolve this case.

> **4.     The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys Support the Fee Award**

Two of the *Johnson* factors concern the skills required to litigate the action and "[t]he experience, reputation, and ability of the attorneys" involved. *Johnson*, 448 F.2d at 718-19.

Both factors also support the requested fee award. *Qwest I*, 2006 U.S. Dist. LEXIS 71267, at *18-*19 ("Particularly in a case as complex as this . . . [t]his factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise."). Co-Lead Class Counsel are among the most experienced and skilled antitrust and class action litigators in the country, and their reputation and ability to sufficiently fund the case conveyed a credible trial threat that no doubt entered Defendants' calculus when deciding to settle and negotiate terms. Joint Decl., ¶109; *see also* firm resumes attached as Exhibits A and G to the Goldfarb and Mitchell Fee Declarations, respectively. The numerous prestigious accolades and awards Co-Lead Class Counsel have won are one indication of their skill, as is the list of cases that they have won or settled on favorable terms. *See id.* That experience and skill was demonstrated during the prosecution and resolution of this Litigation.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Counsel. *See Qwest I*, 2006 U.S. Dist. LEXIS 71267, at *18 (finding that counsel for defendants were also "represented by lawyers of similar expertise and experience"). Defendants in

- 16 -

this case were represented by skilled counsel from top-tier defense firms: Shearman & Sterling[14]; Wilson Sonsini Goodrich & Rosati; Covington & Burling LLP; Vorys, Sater, Seymour & Pease LLP. These firms have considerable experience litigating complex class actions and spared no effort in vigorously defending their respective clients. Notwithstanding this formidable opposition, Co-Lead Class Counsel's ability to present a strong case and to demonstrate their willingness and ability to continue to prosecute the Litigation through trial and inevitable appeals helped secure favorable settlements from all the Defendants in this action.

### 5. The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case Supports the Fee Award

Co-Lead Class Counsel has spent over 21,600 hours prosecuting the Action. Those hours were time that Co-Lead Class Counsel's attorneys could not devote to other matters. Co-Lead Class Counsel did so, knowing they faced a significant risk of no recovery and would receive no payment for their fees and expenses unless they achieved a successful outcome, which was likely to be years later, if at all. Accordingly, this factor supports the requested fee. *See, e.g.*, *Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1244 (D.N.M. 2016) (finding preclusion of other employment due to acceptance of the case supported requested fee award because "[w]ithout question, this case required a significant commitment of time on the part of Class Counsel"); *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) ("Without doubt, time spent by lead counsel on this case was at the expense of time that lead counsel could have spent on other cases.").

---

[14]   1-800 Contacts was represented by Munger Tolles & Olson LLP until mid-October 2018.

6.      **The Customary Fee and Fee Awarded in Similar Cases Support the Fee Award**

As set forth above, Co-Lead Class Counsel's requested fee of 33% is justified because of the unusual difficulty of this case, the skill necessary to prosecute it, the extended commitment this case required, and the excellent results achieved.  There is ample precedent, as noted above, for a fee in this range in such cases.  Accordingly, this factor also supports the requested fee.

7.      **The Fact that the Fee Is Contingent Supports the Fee Award**

A determination of a fair fee must include consideration of the contingent nature of the fee and the significant risks of non-recovery.  *See Vaszlavik v. Storage Technology Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000); *see also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest II*, 625 F. Supp. 2d at 1151 ("A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.  These considerations are applicable here.").  Here, Co-Lead Class Counsel prosecuted this Litigation on a wholly contingent basis and bore the risks and expense of litigating the case through trial and likely appeals.  Moreover, Co-Lead Class Counsel understood from the outset that they were embarking on a complex, expensive and potentially lengthy litigation, which could (and did) require the investment of millions of dollars in expert and consultant fees and thousands of hours of attorney time, with no guarantee of ever being compensated for the investment of such time and resources.  In undertaking this risk, Co-Lead Class Counsel ensured sufficient resources were dedicated to prosecuting this Litigation.

- 18 -

The risks of contingent litigation are highlighted by the fact that a dramatic change in the law can result in the dismissal of a claim after a great deal of time and effort has been expended on the case. The Supreme Court has shown significant interest in antitrust cases in recent years. *See, e.g.*, *Apple Inc. v. Pepper*, __ U.S. __, 139 S. Ct. 1514 (2019); *Ohio v. Am. Express Co.*, __ U.S. __, 138 S. Ct. 2274 (2018); *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). As a result of these and other developments, many cases are lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery. Indeed, other cases demonstrate the real risks associated with such developments. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig. MDL 1869*, 725 F.3d 244 (D.C. Cir. 2013) (overturning order certifying a class in a case that began in 2007 and remanding for further proceedings), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019) (affirming subsequent order in same case denying certification of a class in a case that began 12 years earlier).

Even lawyers who defeat summary judgment and succeed at trial may find their client's judgment overturned on appeal or on a post-trial motion, as occurred in *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), where the court granted defendants' judgment as a matter of law on the basis of loss causation, overturning a jury verdict and award in plaintiff's favor. Thus, the risk that Co-Lead Class Counsel would invest substantial financial resources and receive nothing militates in favor of approving the fee request.

## 8.    The "Undesirability" of the Case Supports the Fee Award

This was a particularly challenging case, as noted, requiring significant outlays on experts, against an uncertain chance of recovery, highlighting the "undesirability" of the case, as that term is

used in the tenth *Johnson* factor.  As another court said in applying the *Johnson* factors to a fee request in an antitrust case,

> there are some aspects of this case that made it undesirable.  The risk of nonrecovery, discussed *supra*, is significant.  Further, the relatively small size of the individual claims made undertaking expensive litigation on a contingent fee an unattractive proposition.  Class certification would change this dynamic, but, here, there remains a serious risk that a class will not be certified.  Accordingly, the Court finds that the risks inherent in this case warrant an increase in the fee award.

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *22 (E.D. La. July 27, 2015).  The same is true here.  *See also Lucas v. Kmart Corp.*, No. 99-01923 JLK-CBS, 2006 WL 2729260, at *7 (D. Colo. July 27, 2006) ("Given the risk of no recovery and the unsettled legal issues described above, this was not a desirable case to take."); *Qwest I*, 2006 U.S. Dist. LEXIS 71267, at *27 (finding case undesirable, noting "[a]t a minimum, this case required lead counsel to advance large amounts of time, money, and other resources to determine if any recovery might be had").

While the FTC filed its administrative complaint before Co-Lead Class Counsel filed this action, the FTC had a much easier row to hoe.  It did not have to establish impact on most purchasers, certify a class, or quantify damages.  Thus, the existence of the FTC action does not cut against the conclusion that this action belongs in the undesirability category.

When Co-Lead Class Counsel undertook this action, it was with the knowledge that they would have to spend substantial time and resources, and face significant risks, without any assurance of compensation.  These risks must be assessed as they existed at the time counsel undertook the case and not in light of the settlement ultimately achieved.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 09-MD-02036-JLK, 830 F. Supp. 2d 1330, 1364 (S. D. Fla. Nov. 22, 2011)

(undesirability and relevant risks to be judged as of the time the suit was commenced). This *Johnson* factor supports approval of Co-Lead Class Counsel's fee request.

> ### 9.    The Nature and Length of the Professional Relationship with the Client

This factor militates in favor of the requested fee award. *See Shaw*, 2015 WL 1867861, at *7 ("Unlike corporate clients, who may need future legal services from their counsel, the likelihood that many class members will be seeking additional representation from Class Counsel is slim. Moreover, the wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships.").

## III.    THE REQUESTED EXPENSES ARE REASONABLE

In addition to a reasonable attorneys' fee, Co-Lead Lead Class Counsel respectfully seek $4,108,181.96 for expenses and charges Plaintiffs' Counsel reasonably and necessarily paid or incurred in investigating, prosecuting and resolving the claims against Defendants. These expenses are itemized in the declarations of Co-Lead Class Counsel submitted herewith and are properly sought.[15]

"'As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred.'" *Cecil v. BP Am. Prod. Co.*, No. 16-CV-00410-KEW, 2018 WL 8367957, at *9 (E.D. Okla. Nov. 19, 2018) (quoting *Vaszlavik*, 2000 WL 1268824, at *4). The expenses and charges for which Co-Lead Class Counsel

---

[15]   This amount includes: (i) $2,082,191.34 in expenses and charges from the Robbins Geller firm (Mitchell Fee Decl., ¶¶5-6 and Ex. B); (ii) $1,855,990.62 in expenses from the Boies Schiller firm (Goldfarb Fee Decl., ¶6); (iii) litigation fund contributions of $75,000, $50,000 and $25,000 from Dilworth Paxson LLP, Robbins Arroyo LLP and Ronald Marron/William Markham, respectively (Mitchell Fee Decl., Ex. F); and (iv) $20,000 in other expenses non-lead plaintiffs' counsel have indicated that they incurred in the litigation.

seek payment are the types of expenses and charges that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  *See Bratcher*, 8 F.3d at 725-26 (expenses properly awarded if such charges would normally be billed to client).  The lion's share of expenses are for experts or consultants, who were key to the successful prosecution of this matter.  The balance of Co-Lead Class Counsel's expenses include charges for:  (i) use of Westlaw, Lexis and other data bases for legal and factual research; (ii) the expenses of Co-Lead Class Counsel, including for travel to hearings, meetings and depositions; (iii) printer services and messenger services; (iv) court reporters and videographers; and (v) setting up and managing a database of documents (including photocopying, imaging and shipping documents).  These expense items are billed separately by Co-Lead Class Counsel, and such charges are not included in the firms' billing rates.  *See* Mitchell Fee Decl., ¶¶5-6.  *See Cecil*, 2018 WL 8367957, at \*9 (approving "expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts, document production and review, and mediation, which are typical of large, complex class actions such as this").[16]

## IV.   PLAINTIFFS SHOULD BE AWARDED REASONABLE SERVICE AWARDS

The Tenth Circuit has recognized the appropriateness in many cases of providing service awards to class representatives, stating:

> [W]e note that courts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case.  *See, e.g.*, *Cobell v. Salazar*, 679 F.3d 909, 922-23 (D.C. Cir. 2012) (district court did not err in finding that lead plaintiff's "singular, selfless, and tireless investment of time, energy, and personal funds to ensure survival of the litigation [merited] an incentive award"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)

---

[16]   A portion of these expenses were incurred, and paid, from the joint litigation fund maintained by Robbins Geller and created to fund the common litigation expenditures in this Litigation.  *See* Mitchell Fee Decl., ¶6(f) and Ex. F.

> ("Incentive awards . . . are intended to compensate class representatives for work done on behalf of the class. . . ."). These services typically include "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Newberg* [*on Class Actions*] § 17:3 [5th ed. 2016]. The award should be proportional to the contribution of the plaintiff.

*Chieftain I*, 888 F.3d at 468. The Tenth Circuit has also stated that service awards are justified to incentivize a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880-Retail Food Emps. Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235-36 (10th Cir. 2009) ("[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.").

District courts in the Tenth Circuit have repeatedly granted service awards. *See McClintock v. Continuum Producer Servs., L.L.C.*, No. 6:17-CV-00259-JAG, 2020 WL 3022744, at *3 (E.D. Okla. June 4, 2020) ("Applying federal common law, federal courts regularly grant incentive awards to compensate named plaintiffs for the work they performed."); *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1251 (D. Kan. 2015) ("An incentive award 'perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving as the] named class representative.'") (quoting *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *12 (D. Kan. Oct. 26, 2012), *aff'd in part, dismissed in part*, 550 F. App'x 566 (10th Cir. 2013)); *Lucken Family Ltd. P'ship*, 2010 WL 5387559, at *6 ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class."); *Droegemueller v. Petroleum Dev. Corp.*, Nos. 07-cv-1362-JLK-CBS, 07-cv-2508, 2009 WL 961539, at *5 (D. Colo. Apr. 7, 2009) ("Numerous courts have recognized that incentive awards are an

efficient and productive way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class.").

Here, Co-Lead Class Counsel would not have been able to prosecute this case for $40 million without the assistance of Plaintiffs.  All plaintiffs went through a vetting process from Co-Lead Class Counsel to ensure their fitness as a fiduciary to the Classes.  Once named as plaintiffs in the Consolidated Amended Complaint, the class representatives responded to interrogatories, produced documents, and consented to intrusive searches of their computers and/or cell phones; monitored the work of Class Counsel; prepared for and sat for depositions; and were prepared to testify at trial. Joint Decl., ¶¶54, 63-65.  Because this case involved search engine advertising, Plaintiffs had to allow their entire personal computers and/or cell phones, which they used to purchase contact lenses online, to be imaged, and then allow Co-Lead Class Counsel to review their web browsing histories and produce responsive documents.  *Id.*  As part of that process, everything on the device was imaged, no matter how sensitive or personal.  *Id.*

The requested service awards are reasonable, justified based on their involvement in the Litigation, and in line with similar awards approved in other cases in this circuit.  *See*, *e.g.*, *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (granting $10,000 service award to subclass representative); *Lucken Family Ltd. P'ship*, 2010 WL 5387559, at *6 (approving $10,000 award); *Ponca Tribe of Indians*, 2009 WL 2836508, at *2 (approving service awards ranging from $1,000 to $15,000).  Thus, the awards sought by these Plaintiffs are reasonable and fully justified based on their involvement in the Litigation.

## V.    CONCLUSION

For all the foregoing reasons, Co-Lead Class Counsel respectfully request that the Court award attorneys' fees in the amount of 33% of the Settlement Fund and expenses and charges in the amount of $4,108,181.96, plus accrued interest on both amounts at the same rate as earned on the Settlement Fund.  Co-Lead Class Counsel also request that Plaintiffs be awarded $12,500 each or the aggregate amount of $100,000 for representing the Classes in this Litigation.

DATED:  August 21, 2020              Respectfully submitted,

                                     ROBBINS GELLER RUDMAN & DOWD LLP
                                     DAVID W. MITCHELL (Admitted *Pro Hac Vice*)
                                     BRIAN O. O'MARA (Admitted *Pro Hac Vice*)
                                     STEVEN M. JODLOWSKI (Admitted *Pro Hac Vice*)
                                     ASHLEY M. KELLY (Admitted *Pro Hac Vice*)


                                     _____s/ David W. Mitchell_____
                                                DAVID W. MITCHELL

                                     655 West Broadway, Suite 1900
                                     San Diego, CA  92101
                                     Telephone:  619/231-1058
                                     619/231-7423 (fax)

                                     Counsel for Plaintiffs and
                                     Interim Lead Counsel for the Putative Class

DATED:  August 21, 2020              BOIES SCHILLER FLEXNER LLP
                                     CARL GOLDFARB (Admitted *Pro Hac Vice*)


                                     _____s/ Carl Goldfarb_____
                                                CARL GOLDFARB
                                     (Signed by filing attorney with permission.)

                                     401 East Las Olas Blvd., Suite 1200
                                     Fort Lauderdale, FL  33301
                                     Telephone:  954/356-0011
                                     954/356-0022 (fax)

4827-6626-6568.v1

BOIES SCHILLER FLEXNER LLP
SCOTT E. GANT (Admitted *Pro Hac Vice*)
1401 New York Ave., NW
Washington, DC  20005
Telephone:  202/237-2727
202/237-6131 (fax)

Counsel for Plaintiffs and
Interim Lead Counsel for the Putative Class

ANDERSON & KARRENBERG
HEATHER M. SNEDDON
JARED SCOTT
50 West Broadway, Suite 700
Salt Lake City, UT  84101
Telephone:  801/534-1700
801/364-7697 (fax)

Counsel for Plaintiffs

4827-6626-6568.v1